[No. S016721. Dec. 12, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
MANUEL DE JESUS SAILLE, Defendant and Appellant.

1104

## COUNSEL

Richard L. Phillips, Mark E. Cutler and Bradley A. Bristow, under appointments by the Supreme Court, for Defendant and Appellant.

Fiedler, Gardner & Derham, Cliff Gardner, Elaine A. Alexander, Martin Buchanan and Madeline McDowell as Amici Curiae on behalf of Defendant and Appellant.

John K. Van de Kamp and Daniel E. Lungren, Attorneys General, Richard B. Iglehart and George Williamson, Chief Assistant Attorneys General, Arnold O. Overoye, Assistant Attorney General, Jane N. Kirkland, W. Scott Thorpe and Janet Neeley Kvarme, Deputy Attorneys General, for Plaintiff and Respondent.

John J. Meehan, District Attorney (Oakland), Thomas J. Orloff, Chief Assistant District Attorney, Kent S. Scheidegger and Charles L. Hobson as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

PANELLI, J.—We granted review in this case to resolve a conflict among the Courts of Appeal regarding the impact of legislation abolishing diminished capacity on the crime of voluntary manslaughter. Specifically, the issue is whether the law of this state still permits a reduction of what would otherwise be murder to nonstatutory voluntary manslaughter due to voluntary intoxication and/or mental disorder.[1] In this case, the Court of Appeal held that it does not. After careful examination of the relevant statutes and legislative history, we agree.

Following a retrial, defendant was convicted of the first degree murder of Guadalupe Borba (Pen. Code, § 187)[2] and the attempted murder of David Ballagh (§§ 664/187). His earlier conviction for these crimes was reversed

---

[1]Another type of nonstatutory voluntary manslaughter—the so-called "imperfect self-defense" doctrine—has been recognized in California. That doctrine applies to reduce an intentional killing from murder to manslaughter when a person kills under an honest but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury. (*People v. Flannel* (1979) 25 Cal.3d 668, 674-680 [160 Cal.Rptr. 84, 603 P.2d 1]; *People v. Van Ronk* (1985) 171 Cal.App.3d 818, 823 [217 Cal.Rptr. 581].) This doctrine has no application to the facts before us, and we do not decide whether it has been affected by Proposition 8 and the 1981 legislation.

[2]All further statutory references are to the Penal Code unless otherwise indicated.

on appeal for *Wheeler* error (*People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748]).

## Facts

On November 30, 1985, defendant started drinking at a friend's house shortly before noon. He had drunk 15 to 18 beers by about 6 o'clock that evening; he then went to a bar and drank about 3 or 4 more beers. He was noticeably drunk when he went to Eva's Cafe about 9 p.m. The bartender signalled the security guard, David Ballagh, to ask defendant to leave. Ballagh told defendant he could not drink there because he appeared intoxicated and asked defendant to leave; defendant did so. Defendant returned about an hour later, but was reminded by Ballagh that he could not come in. Defendant left but returned again around 11 p.m. and was rebuffed once again by Ballagh. As he left he said to Ballagh, "I'm going to get a gun and kill you."

Defendant went home around 1 a.m., got his rifle (a semiautomatic assault rifle), and returned to the bar. As he entered the bar, defendant said to Ballagh, "I told you I would be back." Ballagh tried to grab the rifle; it discharged and killed a patron. Defendant was eventually subdued outside the bar; both he and Ballagh were shot during the struggle.

A blood sample taken from defendant about two hours later showed a blood-alcohol level of .14 percent. Expert testimony at trial established that the level would have been about .19 percent at the time of the shooting.

## Contentions

Defendant contends the court's instructions on the effect of voluntary intoxication were inadequate. The court gave CALJIC No. 4.21, stating that voluntary intoxication could be considered in determining whether defendant *had the specific intent to kill.* The court instructed on first and second degree murder and voluntary and involuntary manslaughter. ■■■ It did not, however, relate voluntary intoxication to anything other than the specific intent to kill. Defendant contends the instructions were insufficient because they did not tell the jury that voluntary intoxication, like heat of passion upon adequate provocation, could negate express malice and reduce what would otherwise be murder to voluntary manslaughter. Defendant also contends that the court should have instructed sua sponte that the jury could consider his voluntary intoxication in determining whether he had premeditated and deliberated the murder. Defendant further contends that the instructions on involuntary manslaughter improperly required a showing of unconsciousness.

In rejecting these contentions, the Court of Appeal based its reasoning on the legislative enactments that (1) abolished diminished capacity and (2) clarified the definition of malice aforethought. Accordingly, before we can properly assess the correctness of the Court of Appeal's interpretation of the legislation, we review the historical development of the doctrine of diminished capacity.

The first step in the development of the diminished capacity doctrine was taken in *People* v. *Wells* (1949) 33 Cal.2d 330 [202 P.2d 53]. (See *People* v. *Wetmore* (1978) 22 Cal.3d 318, 323 [149 Cal.Rptr. 265, 583 P.2d 1308].) In *Wells* the defendant, a life-term prisoner, was charged with assault on a prison guard, which was a capital offense if done with malice aforethought. The defendant contended he did not act with malice aforethought because he was reacting to an honest but unreasonable fear of bodily harm. He sought to introduce psychiatric testimony at the guilt phase to show that he was suffering from an abnormal physical and mental condition that caused him to fear for his personal safety in response to even slight external stimuli. We held that the trial court erred in excluding the proffered evidence. We explained: "Evidence which tends to show legal insanity . . . is not admissible at the first stage of the trial because it is not pertinent to any issue then being litigated; but competent evidence, other than proof of sanity or insanity, which tends to show that a (then presumed) legally sane defendant either *did* or *did not in fact* possess the required specific intent or motive is admissible." (*Wells, supra,* 33 Cal.2d at p. 351, italics added.)

The next step was taken in *People* v. *Gorshen* (1959) 51 Cal.2d 716 [336 P.2d 492]. Gorshen, a longshoreman, reported to work intoxicated and was told by his foreman to go home. After Gorshen refused to leave, the two men fought briefly. The fight ended when the foreman knocked Gorshen to the ground. Gorshen announced that he was going to go home, get his gun, return, and kill the foreman. Gorshen went home, cleaned and loaded his gun, returned to the docks, and killed the foreman. In addition to introducing evidence of his intoxication, Gorshen introduced psychiatric testimony that he was suffering from a mental disease at the time of the killing. The psychiatrist described the effect of the disease and concluded that Gorshen did " 'not have the mental state which is required for malice aforethought or premeditation or anything which implies intention, deliberation or premeditation.' " (*Id.,* at p. 723.) The trial court found Gorshen guilty of second degree murder. The court relied on the psychiatrist's testimony to reduce the murder to second degree, but found there was malice aforethought.

Citing *People* v. *Wells, supra,* 33 Cal.2d 330, we upheld the admission of the psychiatric evidence, as it was evidence of defendant's mental infirmity

short of insanity that tended to prove the defendant did not have the necessary specific mental state to commit first degree murder. (*Gorshen, supra*, 51 Cal.2d at p. 726.) In so doing, we opened the door for diminished capacity, since we permitted expert evidence "not as a 'complete defense' negating capacity to commit any crime but as a 'partial defense' negating [a] specific mental state essential to a particular crime." (*Id.*, at p. 727.) Moreover, we recognized that murder could be reduced to manslaughter, not only on the statutory basis of the reasonable person objective standard of provocation (§ 192), but also on the subjective standard of defendant's voluntary intoxication or mental impairment. (51 Cal.2d at pp. 731-733.)

In *People v. Conley* (1966) 64 Cal.2d 310 [49 Cal.Rptr. 815, 411 P.2d 911] we applied the *Gorshen-Wells* principles to reverse the defendant's conviction of two counts of first degree murder. The defendant shot and killed his former girlfriend and her husband. He testified that he did not intend to kill the victims and that he did not remember anything from the time he was drinking at his sister's house until the time of his arrest shortly after the shooting. His blood-alcohol level was .21 percent three hours after the shooting. We held that the trial court erred in refusing to give voluntary manslaughter instructions based on the defendant's diminished capacity as a result of voluntary intoxication. We concluded that the statutory limitation of voluntary manslaughter to homicides caused by adequate provocation (§ 192) was not exclusive: "[S]ince the statute [§ 192] had been enacted before the concept of diminished capacity had been developed, its enumeration of nonmalicious criminal homicides did not include those in which the lack of malice results from diminished capacity." (*Conley, supra*, at p. 318.) As a result, malice aforethought could be negated by showing that a person who intentionally killed was incapable of harboring malice aforethought because of a mental disease or defect or intoxication. (*Ibid.*) To explain how diminished capacity negated malice, we redefined and expanded the mental component of malice aforethought beyond that stated in section 188[3] to include a requirement that the defendant was able to comprehend the duty society places on all persons to act within the law, i.e., that he had an "awareness of the obligation to act within the general body of laws regulating society." (*Id.*, at p. 322.) Pursuant to this definition, we concluded that someone who is unable, because of intoxication or mental illness, to comprehend his duty to govern his actions in accord with the duty imposed by law, cannot act with malice aforethought.

---

[3] Section 188 at that time provided that malice "may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow-creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (*People v. Conley, supra*, 64 Cal.2d at p. 320.)

In *People* v. *Poddar* (1974) 10 Cal.3d 750 [111 Cal.Rptr. 910, 518 P.2d 342] we put the final gloss on the definition of malice aforethought. There, in the context of implied malice, we added the requirement that the defendant, even if aware of his duty to act in accordance with the law, also *be able to act* in accordance with that duty. (*Id.*, at p. 758.)

Finally, in *People* v. *Wetmore, supra*, 22 Cal.3d 318, we addressed the kind of evidence admissible on the issue of defendant's mental state. We held that evidence which tended to show a defendant *could not* form the requisite mental state is admissible in the guilt phase even though the evidence is also probative of insanity. In so doing, we rejected dictum in *People* v. *Wells, supra*, 33 Cal.2d 330, that evidence tending to show lack of mental capacity to commit the crime because of insanity was inadmissible at the guilt phase of trial. (*People* v. *Wetmore, supra*, 22 Cal.2d at p. 323.) We observed that our holding would result in the duplication of evidence presented at the legislatively mandated bifurcated trial on guilt and insanity. We therefore urged the Legislature to reconsider the wisdom of the statutes providing for bifurcated trial. (*Id.*, at p. 331.)

In response to our request, the Joint Committee for Revision of the Penal Code held two public hearings on the subject of psychiatric evidence and the defenses of diminished capacity and insanity. These hearings led to the introduction of Senate Bill No. 54, 1981-1982 Regular Session, to abolish the defense of diminished capacity. (Comment, *Admissibility of Psychiatric Testimony in the Guilt Phase of Bifurcated Trials: What's Left After the Reforms of the Diminished Capacity Defense?* (1984) 16 Pacific L.J. 305, 316-318.) After substantial amendment, Senate Bill No. 54 was enacted into law in September 1981. (Stats. 1981, ch. 404, pp. 1591-1592.)[4]

Senate Bill No. 54 added to the Penal Code sections 28 and 29, which abolished diminished capacity and limited psychiatric testimony. It amended section 22 on the admissibility of evidence of voluntary intoxication, section 188 on the definition of malice aforethought, and section 189 on the definition of premeditation and deliberation.[5] Other sections not relevant here were also amended.

■ Section 28, subdivision (a) provides in pertinent part that evidence of mental illness "shall not be admitted to show or negate the *capacity* to form

---

[4]The original version of Senate Bill No. 54 was far more sweeping in effect. It would have repealed the plea of not guilty by reason of insanity, abolished diminished capacity, and made mental illness and voluntary intoxication matters to be considered only in mitigation of punishment. The scope of the bill was narrowed as it went through the Legislature. The last amendments made by the Assembly on August 11, 1981, resulted in the language we must interpret in sections 22, 28, and 29. (Sen. Bill No. 54, as amended Aug. 11, 1981.)

[5]Subsequent minor amendments have been made to these statutes. We quote the current version of the statutes.

any mental state," but is "admissible solely on the issue of whether or not the accused *actually formed* a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged." (Italics added.) Subdivision (b) of section 28 abolishes the defenses of diminished capacity, diminished responsibility, and irresistible impulse "as a matter of public policy."

Section 29 provides that any expert testifying in the guilt phase of a criminal action "shall not testify as to whether the defendant had or did not have the required mental states, which include, but are not limited to, purpose, intent, knowledge, or malice aforethought, for the crimes charged. The question as to whether the defendant had or did not have the required mental states shall be decided by the trier of fact."

Section 22 was amended to reflect the abolition of diminished capacity. It provides that evidence of voluntary intoxication is not admissible to negate the capacity to form any mental state, but it is admissible "solely on the issue of whether or not the defendant actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged."

A provision abolishing the defense of diminished capacity was also included in the initiative measure adopted in June 1982 and known as Proposition 8. Section 25 was added to the Penal Code as part of Proposition 8. Subdivision (a) of section 25 provides: "The defense of diminished capacity is hereby abolished. In a criminal action, as well as any juvenile court proceeding, evidence concerning an accused person's intoxication, trauma, mental illness, disease, or defect shall not be admissible to show or negate capacity to form the particular purpose, intent, motive, malice aforethought, knowledge, or other mental state required for the commission of the crime charged."

Although there was initially some confusion about the interaction between section 25, subdivision (a) and section 28 (*People v. Spurlin* (1984) 156 Cal.App.3d 119, 128 [202 Cal.Rptr. 663]), courts and commentators now appear to agree that the two sections are complementary and that both statutes remain operative. (See 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Defenses, § 211, pp. 241-243; *People v. McCowan* (1986) 182 Cal.App.3d 1, 11-13 [227 Cal.Rptr. 23]; *People v. Young* (1987) 189 Cal.App.3d 891, 904-905 [234 Cal.Rptr. 819].)

*Scope of Voluntary Manslaughter*

Defendant argues that the new legislation did not limit the ability of an accused to reduce an intentional killing to voluntary manslaughter as a

result of mental illness or involuntary intoxication. He relies primarily on *People* v. *Molina* (1988) 202 Cal.App.3d 1168 [249 Cal.Rptr. 273].

In *Molina,* a psychotic mother, who was experiencing auditory hallucinations, strangled and killed her 18-month-old son and set fire to the house. The trial court refused requested instructions on the lesser offenses of voluntary and involuntary manslaughter. The defendant was convicted of second degree murder and found not guilty by reason of insanity. The Court of Appeal reversed.

The *Molina* court reviewed sections 25, 28, and 29, noting that the statutory language provides that "evidence of mental problems is inadmissible to show that a defendant *lacked the capacity to form* the requisite mental state, but is admissible to show that the defendant *actually lacked the requisite mental state.*" (202 Cal.App.3d at p. 1173.) From this the court concluded: "The inclusion of the language in subdivision (a) [of section 28] regarding actual formation of mental states shows that the Legislature did not foreclose the possibility of a reduction from murder to voluntary manslaughter where malice is lacking due to mental illness, or a further reduction to involuntary manslaughter where intent to kill is not present for the same reason." (*Id.,* at p. 1174.)

We are unpersuaded by defendant's reliance on *Molina, supra,* 202 Cal.App.3d 1168, since the court's analysis failed to consider the effect on the definition of malice of the amendment to section 188, which was part of the same legislative package as sections 25, 28, and 29.

■ Section 188, as amended by Senate Bill No. 54 (see fn. 5, *ante*), now provides: "Such malice may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied, when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart. [¶] *When it is shown that the killing resulted from the intentional doing of an act with express or implied malice as defined above, no other mental state need be shown to establish the mental state of malice aforethought. Neither an awareness of the obligation to act within the general body of laws regulating society nor acting despite such awareness is included within the definition of malice.*" (Italics added.)

The first sentence of the underscored passage limits malice to the definition set forth in section 188. This sentence clearly provides that once the trier of fact finds a deliberate intention unlawfully to kill, no other mental state need be shown to establish malice aforethought. Whether a defendant acted with a wanton disregard for human life or with some antisocial motivation is

no longer relevant to the issue of express malice. (*People* v. *Stress* (1988) 205 Cal.App.3d 1259, 1267-1268 [252 Cal.Rptr. 913].) No doubt about this conclusion is possible when the last sentence of section 188 is analyzed. That sentence directly repudiates the expanded definition of malice aforethought in *People* v. *Conley, supra,* 64 Cal.2d 310, and *People* v. *Poddar, supra,* 10 Cal.3d 750, that express and implied malice include an awareness of the obligation to act within the general body of laws regulating society and the capability of acting in accordance with such awareness. After this amendment of section 188, express malice and an intent unlawfully to kill are one and the same.[6] (*People* v. *Stress, supra,* 205 Cal.App.3d at p. 1268.)

Pursuant to the language of section 188, when an intentional killing is shown, malice aforethought is established. Accordingly, the concept of "diminished capacity voluntary manslaughter" (nonstatutory manslaughter) recognized in *Conley, supra,* 64 Cal.2d 310, is no longer valid as a defense.

However, while retreating from the *Conley/Poddar* definition of malice aforethought, the Legislature left unchanged the definition of voluntary manslaughter in section 192. Indeed, that definition has not changed since section 192 was first enacted in 1872. Section 192 defines voluntary manslaughter as the "unlawful killing of a human being without malice . . . [¶] . . . upon a sudden quarrel or heat of passion." Thus, pursuant to the language of section 188, when an intentional killing is shown, malice aforethought is established. Section 192, however, negates malice when the intentional killing results from a sudden quarrel or heat of passion induced by adequate provocation.

Defendant disagrees. Relying on the language in section 188 that requires for express malice a "deliberate intention unlawfully" to take a life, he argues that express malice requires more than mere intent to kill. We find the Court of Appeal's reasoning to the contrary in *People* v. *Bobo*\* (1990) 229 Cal.App.3d 1417, 1440-1441 [271 Cal.Rptr. 277], persuasive: "From the time it was enacted in 1872, section 188 has stated that malice is express 'when there is manifested a deliberate intention unlawfully' to kill. One might argue that the word 'deliberate' has a significance in the distinction between murder and manslaughter. That argument would be mistaken.

---

[6]Some commentators have referred to this as a return to the strict mens rea approach. (Comment, *Admissibility of Psychiatric Testimony in the Guilt Phase of Bifurcated Trials: What's Left After the Reforms of the Diminished Capacity Defense?, supra,* 16 Pacific L.J. 305; Morse & Cohen, *Diminishing Diminished Capacity in California* (June 1982) 2 Cal.Law., at p. 24.)

\*Reporter's Note: Review granted October 11, 1990 (S016988); opinion ordered published December 11, 1991, pursuant to rules 976(d) and 978(c), California Rules of Court; review dismissed as improvidently granted on February 13, 1992, with directions that the opinion remain published.

As noted in *In re Thomas C.* (1986) 183 Cal.App.3d 786, 796-797 [228 Cal.Rptr. 430]: 'In *People* v. *Valentine* (1946) 28 Cal.2d 121 [169 P.2d 1], our Supreme Court pointed out that it was "incorrect [to differentiate] manslaughter from murder on the basis of *deliberate* intent . . . . Deliberate intent . . . is not an essential element of murder, as such. It is an essential element of one class only of first degree murder and is not at all an element of second degree murder." (*Id.*, at pp. 131-132; [citations].) Indeed, the standard CALJIC instruction (No. 8.11 (1983 rev.)) has been held to be a correct definition of express malice aforethought, despite the fact that it does not use the word "deliberate" as used in Penal Code section 188, but merely states that "[m]alice is express when there is manifested an intention unlawfully to kill a human being." (CALJIC No. 8.11.) In short, "deliberate intention," as stated in Penal Code section 188, merely distinguishes "express" from "implied" malice, whereas premeditation and deliberation is one class of first degree murder.' (See also *People* v. *Van Ronk, supra,* 171 Cal.App.3d at p. 824.)

"Moreover, as defined in cases predating *Conley* and *Conley*'s foundational pillars—*People* v. *Wells* (1949) 33 Cal.2d 330, and *People* v. *Gorshen* (1959) 51 Cal.2d 716—the concept of malice aforethought was manifested by the doing of an unlawful and felonious act intentionally and without legal cause or excuse. (*People* v. *Balkwell* (1904) 143 Cal. 259, 263 [76 P. 1017]; *People* v. *Fallon* (1906) 149 Cal. 287, 289-290 [86 P. 689]; *People* v. *Coleman* (1942) 50 Cal.App.2d 592, 596 [123 P.2d 557]; see also *People* v. *Bender* (1945) 27 Cal.2d 164, 181 [163 P.2d 8].) The adjective 'deliberate' in section 188 consequently implies an intentional act and is essentially redundant to the language defining express malice.

"The adverb 'unlawfully' in the express malice definition means simply that there is no justification, excuse, or mitigation for the killing recognized by the law. (*People* v. *Stress, supra,* 205 Cal.App.3d at p. 1268.)"

We still must reconcile the narrowed definition of malice aforethought in section 188 with the language of sections 22, subdivision (b) and 28, subdivision (a). These latter sections make evidence of voluntary intoxication and mental illness admissible solely on the issue of whether the accused "actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged."

*Molina* had relied on the reference to malice aforethought in section 28, subdivision (a) to conclude that the Legislature had not foreclosed the possibility of a reduction of murder to voluntary manslaughter where malice is lacking due to mental illness or intoxication. (*People* v. *Molina, supra,* 202 Cal.App.3d at p. 1174.) As previously stated, however, the *Molina* analysis

did not consider the effect of the Legislature's amendment of the definition of malice in section 188.

As the Court of Appeal noted in *People* v. *Bobo, supra,* 229 Cal.App.3d at page 1442, "section 28, subdivision (a), is a general statute covering all specific intent crimes. Leeway in the language is needed to ensure such coverage. Moreover, malice aforethought can be either express or implied. Nothing is generalized about the definition of express malice in section 188 and no leeway in the language is needed for that precise definition. Furthermore, evidence of mental disease, disorder, or defect is still admissible on the issue of whether the accused actually formed an intent unlawfully to kill—i.e., whether the accused actually formed express malice."

Sections 22 and 28 state that voluntary intoxication or mental condition may be considered in deciding whether the defendant actually had the required mental state, including malice. These sections relate to *any* crime, and make no attempt to define what mental state is required. Section 188, on the other hand, defines malice for purposes of murder. In combination, the statutes provide that voluntary intoxication or mental condition may be considered in deciding whether there was malice as defined in section 188. Contrary to defendant's contention, we see no conflict in these provisions.

 Defendant further argues that the Legislature's narrowing of the definition of express malice and the resulting restriction of the scope of voluntary manslaughter presents a due process problem. We disagree. The Legislature can limit the mental elements included in the statutory definition of a crime and thereby curtail use of mens rea defenses. (See *Patterson* v. *New York* (1977) 432 U.S. 197, 210-211 [53 L.Ed.2d 281, 292-293, 97 S.Ct. 2319].) If, however, a crime requires a particular mental state the Legislature may not deny a defendant the opportunity to prove he did not possess that state. (*Id.,* at p. 215 [53 L.Ed.2d at p. 295].) The abolition of the diminished capacity defense and limitation of admissible evidence to actual formation of various mental states has been held not to violate the due process right to present a defense. (*People* v. *Jackson* (1984) 152 Cal.App.3d 961, 967-970 [199 Cal.Rptr. 848]; *People* v. *Lynn* (1984) 159 Cal.App.3d 715, 731-733 [206 Cal.Rptr. 181]; *People* v. *Whitler* (1985) 171 Cal.App.3d 337, 340-341 [214 Cal.Rptr. 610].) If there is no due process impediment to the deletion of malice as an element of the crime of felony murder (*People* v. *Dillon* (1983) 34 Cal.3d 441, 472-476 [194 Cal.Rptr. 390, 668 P.2d 697]), there is likewise no problem here. In amending section 188 in 1981, the Legislature equated express malice with an intent unlawfully to kill. Since two distinct concepts no longer exist, there has been some narrowing of the mental element included in the statutory definition of express malice. A defendant,

however, is still free to show that because of his mental illness or voluntary intoxication, he did not *in fact* form the intent unlawfully to kill (i.e., did not have malice aforethought). (*People v. Jackson, supra,* 152 Cal.App.3d at p. 968.) In a murder case, if this evidence is believed, the only supportable verdict would be involuntary manslaughter or an acquittal. If such a showing gives rise to a reasonable doubt, the killing (assuming there is no implied malice) can be no greater than involuntary manslaughter. (See *People v. Bobo,*\* *supra,* 229 Cal.App.3d at pp. 1442-1443.)

It follows from the foregoing analysis that the trial court did not err in failing to instruct that voluntary intoxication could negate express malice so as to reduce a murder to voluntary manslaughter.

### Duty to Instruct Sua Sponte

 Defendant contends that the trial court erred in failing to instruct sua sponte that the jury should consider his voluntary intoxication in determining whether he had premeditated and deliberated the murder. As previously mentioned, the instructions given (CALJIC No. 4.21) related voluntary intoxication only to the question of whether defendant had the specific intent to kill.

The Court of Appeal held that the abolition of the defense of diminished capacity had eliminated the need for a sua sponte instruction relating mental illness or voluntary intoxication to the required mental states. It relied on the analysis set forth by Justice Sims in his concurring opinion in *People v. Whitler, supra,* 171 Cal.App.3d at pages 342-343: "These cases represent variations of the familiar rule that a trial court has a *sua sponte* duty to give instructions relating a recognized defense to elements of a charged offense. (*People v. Sedeno* (1974) 10 Cal.3d 703, 716.) . . . [T]he defense of diminished capacity has been abolished. A defendant may still defend against a charge of homicide by presenting evidence of mental disease or defect sufficient to raise a reasonable doubt that he or she in fact had the requisite mental state at the time of the offense. [Citation.] However, when a defendant presents evidence to attempt to negate or rebut the prosecution's proof of an element of the offense, a defendant is not presenting a special defense invoking *sua sponte* instructional duties. While a court may well have a duty to give a 'pinpoint' instruction relating such evidence to the elements of the offense and to the jury's duty to acquit if the evidence produces a reasonable doubt, such 'pinpoint' instructions are not required to be given *sua sponte* and must be given only upon request. [Citations.]"

---

\*See footnote, *ante,* page 1114.

In contesting the Court of Appeal's determination on this issue, defendant relies primarily on *People* v. *Jackson* (1989) 49 Cal.3d 1170 [264 Cal.Rptr. 852, 783 P.2d 211] and *People* v. *Ramirez* (1990) 50 Cal.3d 1158 [270 Cal.Rptr. 286, 791 P.2d 965]. In *Jackson*, the defendant was convicted of first degree murder despite evidence that he did not recall the event and was a chronic user of phencyclidine (PCP). Defendant relies on our discussion in *Jackson* of the defendant's claim that the court erred in instructing on involuntary manslaughter. We noted that both the defense and prosecution had requested the instruction and that the defendant's testimony constituted evidence warranting it. We further stated: "Mitigation of the requisite mental state due to drug intoxication was the primary theory of defense and, even if the defense had not requested the instruction, the court clearly had a sua sponte duty to instruct as it did on both voluntary and involuntary manslaughter." (*People* v. *Jackson, supra,* 49 Cal.3d at p. 1196.) We did not, however, address the question presented here—whether there is a sua sponte duty to instruct on the relationship between voluntary intoxication and premeditation and deliberation. The court in this case did instruct on all aspects of homicide—first and second degree murder, voluntary and involuntary manslaughter.

In *People* v. *Ramirez, supra,* 50 Cal.3d 1158, the trial court refused to give a requested instruction under former CALJIC No. 8.41, relating diminished capacity caused by intoxication to voluntary manslaughter. We found the refusal proper in light of the abolition of the diminished capacity defense, but we noted that no one had raised the potential applicability of CALJIC No. 4.21, which deals with the effect of intoxication on the defendant's *actual* state of mind. Although we held that there was insufficient evidence of intoxication to warrant a sua sponte instruction, we also stated that "a number of decisions have specifically held that in an appropriate case a trial court has a sua sponte duty to instruct the jury on the principles embodied in CALJIC No. 4.21. (See, e.g., *People* v. *Baker* (1954) 42 Cal.2d 550, 576 [268 P.2d 705]; *People* v. *Sanchez* (1950) 35 Cal.2d 522, 527-528 [219 P.2d 9]; *People* v. *Robinson* (1970) 5 Cal.App.3d 43, 48 [84 Cal.Rptr. 796]; *People* v. *Arriola* (1958) 164 Cal.App.2d 430, 435.) . . . Thus, when the evidence warrants and the defense is not inconsistent with the defendant's theory of the case (see *People* v. *Sedeno* (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913]), the principle embodied in CALJIC No. 4.21 is one of 'the general principles of law' (see *People* v. *St. Martin* (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390]) on which the trial court must instruct the jury even in the absence of a request." (*People* v. *Ramirez, supra,* 50 Cal.3d at pp. 1179-1180.)

The discussion in *Ramirez, supra,* 50 Cal.3d 1158, did not consider the points now raised and, in any event, was dictum. The *Ramirez* discussion

appears to assume that intoxication is in the nature of a defense. Technically, however, it was never a defense (see § 22). When voluntary intoxication became subsumed by diminished capacity, it was treated as a part of the defense of diminished capacity. (See, e.g., *People* v. *Gorshen, supra,* 51 Cal.2d at p. 727; *People* v. *Conley, supra,* 64 Cal.2d 310.) ■ The withdrawal of diminished capacity as a defense removes intoxication from the realm of defenses to crimes. Intoxication is now relevant only to the extent that it bears on the question of whether the defendant actually had the requisite specific mental state. ■ Thus it is now more like the "pinpoint" instructions discussed in *People* v. *Sears* (1970) 2 Cal.3d 180, 190 [84 Cal.Rptr. 711, 465 P.2d 847], and *People* v. *Rincon-Pineda* (1975) 14 Cal.3d 864, 885 [123 Cal.Rptr. 119, 538 P.2d 247, 92 A.L.R.3d 845], to which a defendant is entitled upon request. Such instructions relate particular facts to a legal issue in the case or "pinpoint" the crux of a defendant's case, such as mistaken identification or alibi. (See *People* v. *Rincon-Pineda, supra,* 14 Cal.3d at p. 885.) They are required to be given upon request when there is evidence supportive of the theory, but they are not required to be given sua sponte.

All of the cases relied upon and cited by *Ramirez* were decided after our embarkation on the development of the diminished capacity theory in 1949 in *People* v. *Wells, supra,* 33 Cal.2d 330. Moreover, they provide only minimal support for the proposition for which they were cited. In *People* v. *Sanchez* (1950) 35 Cal.2d 522, 527-528 [219 P.2d 9], there was evidence that the defendant had been drinking heavily, but the trial court refused to give the defendant's requested instruction regarding intoxication on the ground that the proffered instruction was incorrect. This court held that the trial court should have given its own instruction if the defendant's version was incorrect. In *People* v. *Baker* (1954) 42 Cal.2d 550 [268 P.2d 705], the trial court gave misleading instructions by reciting only the first part of section 22 to the effect that voluntary intoxication does not excuse criminal conduct without informing that jury that it could nevertheless consider voluntary intoxication in determining whether the requisite intent had been shown. We stated: "Although we might hesitate before holding that the absence of any instruction on voluntary intoxication in a situation such as that presented in this case is prejudicial error, when a partial instruction has been given we cannot but hold that the failure to give complete instructions was prejudicial error." (42 Cal.2d at pp. 575-576.) *People* v. *Arriola* (1958) 164 Cal.App.2d 430 [330 P.2d 683] also involved the giving of only the first part of the intoxication instruction. Without the second part of the instruction it was misleading and erroneous. Finally, *People* v. *Robinson* (1970) 5 Cal.App.3d 43 [84 Cal.Rptr. 796] rejected a claim that the court should have instructed on intoxication on the ground that there was insufficient evidence to justify such an instruction. In passing, however, the court stated: "While a trial

court on its own motion must instruct the jury with respect to the effect of intoxication on a crime requiring specific intent where evidence of intoxication raises a factual issue (*People* v. *Baker*, 42 Cal.2d 550, 572-573, 576; *People* v. *Arriola*, 164 Cal.App.2d 430, 434-435), here the evidence of intoxication was minimal and such instruction was unnecessary." (*Id.*, at p. 48.)

Thus, the authority supportive of the asserted sua sponte duty appears to consist entirely of dicta. (See also *People* v. *Crawford* (1968) 259 Cal.App.2d 874, 877-878 [66 Cal.Rptr. 527]; *People* v. *Watts* (1976) 59 Cal.App.3d 80, 84-85 [130 Cal.Rptr. 601].) The only case involving a direct holding that it was error to fail to instruct sua sponte on voluntary intoxication was itself based on the previously mentioned dicta. (*People* v. *Fanning* (1968) 265 Cal.App.2d 729, 733 [71 Cal.Rptr. 641].)

 Thus, even if there were a duty on the trial court to instruct sua sponte on voluntary intoxication when the defense of diminished capacity existed, we do not believe that it is reasonable for such a duty to continue after abolition of the diminished capacity defense.

In our view, under the law relating to mental capacity as it exists today, it makes more sense to place on the defendant the duty to request an instruction which relates the evidence of his intoxication to an element of a crime, such as premeditation and deliberation. This is so because the defendant's evidence of intoxication can no longer be proffered as a defense to a crime but rather is proffered in an attempt to raise a doubt on an element of a crime which the prosecution must prove beyond a reasonable doubt. In such a case the defendant is attempting to relate his evidence of intoxication to an element of the crime. Accordingly, he may seek a "pinpoint" instruction that must be requested by him (See 5 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Trial, § 2925, pp. 3586-3587), but such a pinpoint instruction does not involve a "general principle of law" as that term is used in the cases that have imposed a sua sponte duty of instruction on the trial court. The court did not err, therefore, in failing to instruct sua sponte.

*Instruction on Involuntary Manslaughter*

 Defendant contends that the instructions on involuntary manslaughter improperly required a showing of unconsciousness. The court gave CALJIC No. 8.45, which defined involuntary manslaughter as follows: "Involuntary manslaughter is the unlawful killing of a human being without malice aforethought and without an intent to kill. [¶] In order to prove the

commission of the crime of involuntary manslaughter, each of the following elements must be proved: [¶] 1. That a human being was killed, and [¶] 2. That the killing was unlawful. [¶] A killing is unlawful within the meaning of this instruction if it occurred: [¶] 1. During the commission of a misdemeanor which is inherently dangerous to human life, namely, the offense of exhibiting a deadly weapon, or [¶] 2. In the commission of an act ordinarily lawful which involves a high degree of risk of death or great bodily harm, without due caution and circumspection."

The court gave CALJIC No. 8.47 (1981 rev.) on killing while unconscious due to voluntary intoxication: "If you find that the defendant killed while unconscious as a result of voluntary intoxication and therefore did not form a specific intent to kill or did not harbor malice aforethought, his killing is involuntary manslaughter. [¶] When a person voluntarily induces his own intoxication to the point of unconsciousness, he assumes the risk that while unconscious he will commit acts inherently dangerous to human life or safety. Under such circumstances, the law implies criminal negligence."

Defendant contends CALJIC No. 8.47 was misleading because it did not define "unconsciousness" and it suggested that the accused must be unconscious to support a finding of involuntary manslaughter. Defendant asserts that one may lack an intent to kill without being unconscious and that the instruction leaves no room for that.

Unconsciousness was, however, defined in CALJIC No. 4.30, which was given on excusable homicide due to involuntary unconsciousness. That instruction made clear that a person need not be incapable of movement to be unconscious. There is no reason to believe the jury would not have applied that definition of unconsciousness when considering CALJIC No. 8.47 on unconscious acts from voluntary intoxication.

The court also instructed on voluntary intoxication as it related to the intent to kill (CALJIC No. 4.21). We agree with the Court of Appeal that the trial court was not required sua sponte to give "pinpoint" instructions relating voluntary intoxication to the elements of the crime—malice and intent to kill. If defendant had wanted a more precise instruction on the possibility of voluntary intoxication negating intent to kill, he should have requested such. Defendant's reliance on *People* v. *Ray* (1975) 14 Cal.3d 20 [120 Cal.Rptr. 377, 533 P.2d 1017] is misplaced because unlike the *Ray* court, the court here did instruct on involuntary manslaughter. It was the "pinpoint" instruction that was missing here, not the instruction on a lesser included offense.

## CONCLUSION

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Mosk, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.

Appellant's petition for a rehearing was denied January 30, 1992.