Filed 12/29/14  P. v. Williams CA5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | F067156 |
| v. | (Super. Ct. No. F12904865) |
| TYRONE WILLIAMS, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Denise Lee Whitehead, Judge.

Ron Boyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Kelly E. LeBel, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Detjen, Acting P.J., Franson, J., and Peña, J.

Defendant Tyrone Williams was convicted by jury trial of two counts of dissuading a victim or witness by force or threat (Pen. Code, § 136.1, subd. (c)(1))[1] and of disobeying a domestic relations court order (§ 273.6, subd. (a)). The jury hung on the charge of inflicting corporal injury against the mother of defendant's child (§ 273.5, subd. (a)). The trial court found unusual circumstances and sentenced defendant to probation and 88 days in jail.

On appeal, defendant contends the trial court erred by failing to instruct sua sponte on the presumption that, as a family member who interceded to protect the victim, he acted without malice (§ 136.1, subd. (a)(3)). We affirm.

## FACTS

Defendant and K. dated off and on for several years. They had two daughters, born in 2008 and 2009. They lived together for a few months during 2009 and 2010, but they were never married. In 2010, the superior court issued a permanent restraining order against defendant based on K.'s allegations of defendant's domestic violence. The order prevented defendant from being near K. or the children. Since 2010, K. had full legal custody of the children.

On June 18, 2012, K. was living in an apartment in Fresno. Defendant did not live with her, but he frequently spent the night with her. That night, the children were staying with a relative. K. and defendant got into an argument around 3:00 or 4:00 a.m. because defendant claimed she was not a good housekeeper. He punched her arm and slapped her head. She screamed and he covered her mouth, so she bit his hand. He took her keys and cell phone and left. She did not call the police because she was afraid defendant would hurt her. When he returned a few hours later, he gave her the keys and phone. He threatened to kill her if she called the police.

---

[1]     All statutory references are to the Penal Code.

K. left to run some errands. She called her sister and asked if she could come to her home because she was very upset and scared. She was crying on the phone. She said she was afraid of defendant.

As she drove, K. realized defendant was following her on Highway 41. He called her repeatedly and asked her to pull over, but she refused. He told her not to call the police and threatened to have her beat up and raped by his "home boys" if she did. He told her she would be in trouble for violating her own restraining order. He asked her where she was going and she said she was going to her sister's home. Defendant then threatened the sister, claiming he would get his uncle to go over there and "kick her butt." When they were stopped, he talked to her through the open windows of their cars. The sister told K. to lock her doors and keep driving.

When K. arrived at her sister's home, she was crying and shaking. She was unable to function. Her sister had never seen K. like that. When K. told her what had happened, she called the police. The sister also called defendant and told him to leave K. alone. He told the sister she had better not call the police or he would send his mother to "kick [her] ass," and he would send one of his "home girls" to her house to "jump on [her]." She felt threatened. When an officer arrived, the sister told him she was afraid for both K. and herself. The officer spent 10 minutes calming K. down until she could speak to him. She had bruises on her arm, shoulder, and leg. She said her boyfriend, defendant, had inflicted the injuries.[2] Both she and her sister said defendant had threatened to harm them if they called the police. K. moved in with her sister that day.

---

[2] The officer testified on cross-examination that K. told him defendant had moved in with her in February.

*Defense Evidence*

Defendant's cousin testified that K. told her many times that she wanted to drop the restraining order against defendant. According to the cousin, defendant and K. lived together off and on since their first child was born. At the time of this incident, defendant had been trying to get visitation of the children.

Defendant testified that he and K. had separate homes, but he often stayed with her. They spent a lot of time together and "shacked up." Neither of them was working and they both parented the children. When K. got a job, defendant would watch the children. He also performed duties around the house and paid K.'s bills most of the time. He and K. would be together for about three months and then they would split up. When they were together, K. told him the restraining order had been lifted. He believed her until he examined the paperwork. Then he knew he was violating the restraining order when he was with the children and K. But he did it for the love of his children and K., and he felt that the situation would be resolved.

Defendant explained that the argument leading to the incident in this case occurred on June 16, 2012, when he told K. he had had enough and he was leaving her. He said he was tired of splitting up and not being able to have time with the children. K. reacted by attacking him. She rushed at him and stuck her nose in his neck. He had to push her off to defend himself. When he turned around, she scratched his back. As he was trying to get away from her attack, she clamped down and bit his hand. He had to hold her wrists. When he told her that they could both go to jail because of the restraining order, she sat quietly, as if in thought. They talked and then they went to bed as usual. He told her she could get in trouble for domestic violence.

On June 18, 2012, K.'s sister called defendant and asked what was going on because she had seen the bruise on K.'s arm. She told him he was going to jail. She called him again to swear at him, threaten him, and tell him he was going to jail. That

4

day, he took photographs of his injuries, which included scratches on his chest and stomach.

On June 30, 2013, defendant was arrested. Photographs taken of him that day showed an injury on his neck and scratches on his back.

Defendant denied chasing K. on the highway or threatening to harm her if she called the police. He never inflicted an injury on K. that was not in self-defense. He did not know how she got the bruise on her arm.

On cross-examination, defendant explained that he did not call the police after K. attacked him because he did not want to see his daughters' mother go to jail.

## DISCUSSION

To prove the offense of dissuading K. by force or threat under section 136.1, subdivision (c)(1), the prosecution was required to prove that defendant knowingly and maliciously tried to prevent K. from reporting to law enforcement that she was the victim of a crime. A person acts maliciously when he "inten[ds] to vex, annoy, harm, or injure in any way another person, or to thwart or interfere in any manner with the orderly administration of justice." (§ 136, subd. (1).) The person is presumed, however, not to act with malice if he is a *family member* who tries to prevent a witness or victim from reporting a crime for that witness or victim's own protection. (§ 136.1, subd. (a)(3) ["evidence that the defendant was a family member who interceded in an effort to protect the witness or victim shall create a presumption that the act was without malice"]; *People v. Wahidi* (2013) 222 Cal.App.4th 802, 809, fn. 4 ["Section 136.1, subdivision (a)(3), added in 1997 (Stats. 1997, ch. 500, § 1, p. 3123), now directly addresses the issue of family members who attempt to dissuade a witness or victim from testifying not as part of an effort to interfere with the administration of justice, but out of concern for the welfare and safety of the witness or victim"].)

5

Defendant contends the trial court should have instructed the jury sua sponte on this presumption because it negates an element of the crime and thus constitutes a general principle of law upon which the jury should be instructed, and because there was substantial evidence that he, as a family member, was trying to dissuade K. from calling the police in order to protect her from being arrested for violating the restraining order and for attacking him. We disagree with defendant's first contention and therefore do not reach his second.

"'In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case.' [Citation.] That duty extends to '"instructions on the defendant's theory of the case, including instructions 'as to defenses "'that the defendant is relying on …, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.'"'"' [Citation.] But '"when a defendant presents evidence to attempt to negate or rebut the prosecution's proof of an element of the offense, a defendant is not presenting a special defense invoking *sua sponte* instructional duties. While a court may well have a duty to give a 'pinpoint' instruction relating such evidence to the elements of the offense and to the jury's duty to acquit if the evidence produces a reasonable doubt, such 'pinpoint' instructions are not required to be given *sua sponte* and must be given only upon request.'" (*People v. Saille* (1991) 54 Cal.3d 1103, 1117.)" (*People v. Anderson* (2011) 51 Cal.4th 989, 996-997.)[3]

---

[3]    Defendant relies on *People v. Graham* (1969) 71 Cal.2d 303 (*Graham*) at pages 316 through 317 and *People v. Sering* (1991) 232 Cal.App.3d 677, which cites *Graham,* for the proposition that the trial court "has the sua sponte duty applicable to general principles of law to instruct upon 'defenses' negating mental elements of a crime." This statement does not reflect the current state of the law.

For these reasons, the trial court was not required to instruct sua sponte on the family member presumption under section 136.1, subdivision (a)(3). Assuming for the sake of argument that defendant qualified as K.'s family member, he was required to request a pinpoint instruction if he thought the evidence showed he was trying to protect K. when he tried to dissuade her from calling the police, thereby raising a doubt on the element of malice.

## **DISPOSITION**

The judgment is affirmed.

---

As the court in *People v. Ricardi* (1992) 9 Cal.App.4th 1427 explained: *Graham* and cases like it "involved crimes committed before abolition of the defense of diminished capacity. [Citations.] [*People v.* ]*Saille*[, *supra,* 54 Cal.3d 1103]*,* however, held that abolition of the diminished capacity defense had eliminated the need for sua sponte instructions relating voluntary intoxication to a required mental state:

"'[U]nder the law relating to mental capacity as it exists today, it makes more sense to place on the defendant the duty to request an instruction which relates the evidence of his intoxication to an element of a crime, such as premeditation and deliberation. This is so because the defendant's evidence of intoxication can no longer be proffered as a defense to a crime but rather is proffered in an attempt to raise a doubt on an element of a crime which the prosecution must prove beyond a reasonable doubt. In such a case the defendant is attempting to relate his evidence of intoxication to an element of the crime. Accordingly, he may seek a "pinpoint" instruction that must be requested by him (citation), but such a pinpoint instruction does not involve a "general principle of law" as that term is used in the cases that have imposed a sua sponte duty of instruction on the trial court. The court did not err, therefore, in failing to instruct sua sponte.' (*People v. Saille, supra,* 54 Cal.3d at p. 1120.)" (*People v. Ricardi, supra,* 9 Cal.App.4th at pp. 1432-1433.)