Filed 12/21/15  Conservatorship of C.S. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| Conservatorship of the Person of C.S. | |
| SONOMA COUNTY PUBLIC CONSERVATOR,<br><br>　　　　Petitioner and Respondent,<br><br>v.<br><br>C.S.,<br><br>　　　　Objector and Appellant. | A145416<br><br>(Sonoma County<br>Super. Ct. No. SPR-87786) |

C.S. appeals from an order appointing the Sonoma County Public Conservator (Conservator) as conservator of his person under the Lanterman-Petris-Short (LPS) Act. (Welf. & Inst. Code, § 5500 et seq.)[1]  He argues the judgment must be reversed because the evidence was insufficient to support a finding he was gravely disabled within the meaning of the LPS Act.  (§ 5350.)  We affirm the order establishing the conservatorship but remand the case for further proceedings to reconsider two special disabilities imposed on appellant.  (§ 5357.)

FACTS AND PROCEDURAL HISTORY

On April 13, 2015, the Conservator filed a petition to establish an LPS conservatorship over appellant.  The court issued an order establishing a temporary conservatorship, and a court trial on the petition was held on June 4, 2015.

_____

[1]  Further statutory references are to the Welfare and Institutions Code.

1

The Conservator presented the testimony of Dr. Gary Bravo, a psychiatrist with Sonoma County Behavioral Health. Dr. Bravo had been appellant's treating physician at the inpatient unit of the Norton Mental Health Center in 2004 and 2005, and had evaluated appellant's condition several times over the years in conjunction with previous conservatorships and his mental health treatment while incarcerated in jail. Appellant's diagnosis was schizoaffective disorder, bipolar type, and included symptoms of "hyperactivity, accelerated speech, loose associations, grandiose delusions . . . [and] emotional [l]ability, going from euphoric to angry."

Appellant had lived on Social Security for many years but because of his mental illness and periods of substance abuse, he was "either homeless or in the jail." He had been arrested many times and found incompetent to stand trial. Appellant's mental condition made him generally unable to access homeless shelters or services, and although he would sometimes stay at hotels until his money ran out, "he was so disorganized, manic, that he couldn't—couldn't stay in any shelter or even in a hotel." Appellant had recently been in jail and before that had "several 5150's."[2]

Dr. Bravo testified that in his current state, appellant could not provide food, clothing and shelter for himself because he did not believe he had a mental illness. He did not recognize he had a psychiatric problem and when he was not under a conservatorship he would not engage in treatment. Even on medication, appellant's judgment was not that good. Appellant had improved since being moved from the jail to a treatment facility and was taking his prescribed medication. Dr. Bravo believed he would not follow up on mental health treatment if he was not placed under a conservatorship.

Appellant claimed to have plans to move to Reno and stay in a hotel there, but Dr. Bravo believed this was not viable. Appellant had a son in Reno and said he could stay in a board and care home where he had lived six years ago. Appellant still suffered

---

[2] Section 5150 allows the temporary detention of mentally disordered individuals who pose a danger to themselves or others, for treatment and evaluation. (*Jacobs v. Grossmont Hospital* (2003) 108 Cal.App.4th 69, 71-72.)

from delusions and would say he had millions of dollars, had graduated from Harvard Medical School, and was a lead singer or manager of famous bands such as Stone Temple Pilots or Earth, Wind & Fire. These delusions did not themselves render appellant gravely disabled, but they were relevant to the issue of his insight and his lack of insight made him gravely disabled. Appellant's last conservatorship had terminated two years ago.

Appellant testified on his own behalf and explained that if he were released, he planned to go to Reno and move into a board and care home where he had stayed before. He said he had a case manager named "Joe B.," who had been referred to him by the West Hills Hospital. Asked whether he had a mental illness, appellant responded, "In a way. I don't think it's really all of a mental illness. I think it's more of a—more of a—just a—just—just a—just a—what's it called? With a—a 'slipnosis.' " He defined a slipnosis as "[l]ike I kind of go back in time and stuff."

At the conclusion of the trial, the court issued an order declaring appellant to be gravely disabled and appointed the Conservator as the conservator over his person for one year with powers to place appellant without his consent in treatment. The court ordered appellant placed in the least restrictive placement available, which at that time was a locked facility. It also ordered that appellant would be denied the privileges of possessing a driver's license, possessing a firearm or other deadly weapon, or refusing medical treatment relating to his grave disability.

## DISCUSSION

### I. *Substantial Evidence Supports a Finding Appellant Was "Gravely Disabled"*

The court may appoint an LPS conservator for a person who is found beyond a reasonable doubt to be "gravely disabled." (§ 5350.) As relevant here, the definition of "gravely disabled" includes "[a] condition in which a person, as a result of a mental health disorder, is unable to provide for his or her basic personal needs for food, clothing, or shelter." (§ 5008, subd. (h)(1)(A).) Appellant contends the Conservator failed to

3

satisfy its burden because Dr. Bravo's testimony did not establish appellant was unable to provide for his basic needs. We disagree.

"In reviewing a conservatorship, we apply the substantial evidence standard to determine whether the record supports a finding of grave disability. The testimony of one witness may be sufficient to support such a finding. [Citation.] We review the record as a whole in the light most favorable to the trial court judgment to determine whether it discloses substantial evidence." (*Conservatorship of Carol K.* (2010) 188 Cal.App.4th 123, 134.) Substantial evidence is evidence that is "reasonable, credible, and of solid value." (*Ibid.*)

At the hearing on the LPS petition, Dr. Bravo testified that appellant was gravely disabled as a result of schizoaffective disorder, bipolar type, with symptoms that included hyperactivity, accelerated speech, loose associations, grandiose delusions and emotional lability. In Dr. Bravo's opinion, appellant's mental illness rendered him unable to access homeless shelters or stay in a hotel. Appellant did not understand he suffered from a mental illness and was not likely to obtain the necessary treatment unless he was placed under a conservatorship. Appellant's lack of insight into his condition was evidenced by his own testimony that he suffered from "slipnosis."

While the failure to voluntarily accept treatment does not by itself establish grave disability, an LPS conservatorship may be established where the evidence shows the person cannot provide for himself without medication and will not take his medication without the supervision of a conservator. (*Conservatorship of Guerrero* (1999) 69 Cal.App.4th 442, 446; *Conservatorship of Walker* (1989) 206 Cal.App.3d 1572, 1577 (*Walker*).) The evidence supports a finding that appellant, particularly when in an unmedicated state, was not able to secure housing and was thus unable to provide for his basic needs.

Appellant argues that Dr. Bravo's testimony did not amount to substantial evidence of grave disability because it was conclusory in nature and was unsupported by facts or reasons. He relies on *People v. Bassett* (1968) 69 Cal.2d 122, 140-141 (*Bassett*), a criminal case in which the court concluded the psychiatric testimony presented by the

4

prosecution was insufficient to support a conviction for first degree murder against a claim that the defendant lacked the mental capacity for premeditation and deliberation.[3] *Bassett* is distinguishable. There, two of the psychiatric experts had not personally examined the defendant and had concluded, without explanation and without addressing the mass of defense evidence to the contrary, that the defendant would not have been able to act as he had if he really had a severe case of paranoid schizophrenia as testified to by the defense experts. (*Id*. at pp. 142-146.) A third psychiatrist offered an opinion based on a misunderstanding of the term "premeditation." (*Id*. at pp. 146-148.) In contrast, Dr. Bravo had examined appellant many times, cited a number of facts to support his conclusion appellant was gravely disabled, and did not misapprehend the legal standard for an LPS conservatorship.

Appellant additionally argues the evidence was insufficient because a lack of stable housing does not equate to an inability to provide shelter. He relies on *Conservatorship of Smith* (1986) 187 Cal.App.3d 903, 906-907, in which the evidence was deemed insufficient to support a conservatorship over a woman with no permanent home whose paranoid delusions prompted her to hold an around-the-clock vigil outside a church and who occasionally became disruptive enough that she was arrested or taken to a mental hospital. (*Ibid*.) Despite her bizarre behavior, the examining psychiatrist testified the woman's "cognitive intellect and most of her personality was intact and, despite the disorder, she could feed and clothe herself and provide for her own place to live." (*Id*. at p. 907.) Dr. Bravo testified that appellant's mental illness made him unable to provide himself with shelter through homeless shelters or hotels; in other words, this was not simply a case in which appellant was choosing a transient or unusual lifestyle despite his ability to make other arrangements.

---

[3] Diminished capacity has since been abolished as a defense. (*People v. Saille* (1991) 54 Cal.3d 1103, 1112.)

## II. *Special Disabilities*

In addition to its order establishing an LPS conservatorship, the court imposed special disabilities on appellant denying him the privileges of holding a driver's license, possessing a firearm or other deadly weapon, and refusing medical treatment related to his grave disability. He contends those special disabilities cannot stand because no evidence was presented concerning his ability to drive and the evidence that was presented did not show he posed a danger to himself or others as is necessary to restrict his right to possess a firearm. (§§ 5357, subd. (e), 8103, subd. (e)(1).)

Section 5357 provides that the court may impose certain special disabilities on a conservatee, including those ordered in the present case. (§ 5357, subds. (a), (d) & (f).) Proof of a grave disability does not "by itself satisfy the evidentiary requirements for the imposition of special disabilities under section 5357. A conservatee does not forfeit any legal right nor suffer legal disability by reason of the LPS commitment alone." (*Walker*, *supra*, 206 Cal.App.3d at p. 1578, fn. omitted.) " 'The court must separately determine . . . the disabilities imposed on the conservatee . . . . [Citations.] The party seeking conservatorship has the burden of producing evidence to support the disabilities sought . . . and the conservatee may produce evidence in rebuttal.' " (*Conservatorship of George H.* (2008) 169 Cal.App.4th 157, 165 (*George H.*).)

The Conservator agrees that the case should be remanded for further proceedings to consider the special disabilities imposed by the court. (See *Walker*, *supra*, 206 Cal.App.3d at pp. 1578-1579.) We agree with respect to the special disabilities pertaining to appellant's right to hold a driver's license and possess a firearm, issues not directly addressed by Dr. Bravo's testimony and on which the court made no specific findings of fact. We express no opinion as to whether the evidence presented at the hearing was sufficient to support those special disabilities.[4]

---

[4] The doctrine of double jeopardy does not apply to conservatorship proceedings. (*Conservatorship of Baber* (1984) 153 Cal.App.3d 542, 549-550; contrast *People v. Seel* (2004) 34 Cal.4th 535, 542 [in criminal case, finding on appeal that evidence was insufficient to sustain a conviction is comparable to an acquittal and bars a second trial].)

With respect to the order denying appellant the privilege of refusing medical treatment relating to his grave disability, appellant offers no specific argument as to why the evidence was insufficient to support such a finding. Applying the general practice of presuming on appeal every finding of fact necessary to support the judgment if warranted by the evidence, we conclude that appellant's history of refusing to participate in psychiatric treatment or take his medication supported an order suspending his right to refuse medical care relating to his grave disability. (See *George H.*, *supra*, 169 Cal.App.4th at p. 166.)

## DISPOSITION

The order establishing an LPS conservatorship over appellant is affirmed, except to the extent it establishes special disabilities pertaining to appellant's right to possess a driver's license or a firearm or other deadly weapon. With respect to those special disabilities only, the order is vacated and the matter remanded to the trial court for further proceedings.

 

_____
NEEDHAM, J.

We concur.

_____
JONES, P.J.

_____
SIMONS, J.

7