Filed 11/26/24  P. v. Mercado CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALEJANDRO DURAN MERCADO,<br><br>    Defendant and Appellant. | C098425<br><br>(Super. Ct. No. LOD-CR-FE-2021-0002233) |

Defendant Alejandro Duran Mercado shot and killed the victim when the two encountered one another in an area known to be controlled by the Sureños gang.  At trial, Mercado argued that he acted in self-defense.  A jury rejected this theory and found him guilty of second degree murder.

On appeal, Mercado asserts three instructional errors.  First, he contends that the trial court erred by failing to instruct the jury that it could consider prior threats by third parties when evaluating his claim of imperfect self-defense.  Second, Mercado argues that the trial court should not have instructed the jury on first degree murder because murder

was only generically charged in the information.  Third, Mercado claims that the court incorrectly instructed the jury to consider with caution his oral pretrial statements, some of which supported his theory that he acted in self-defense.

We reject Mercado's first two contentions but conclude that the trial court erred in instructing the jury to consider Mercado's pretrial statements with caution.  We further conclude that, given the particular facts in this case, there is a reasonable probability that the outcome of the trial would have been different absent the error.  We therefore reverse the judgment and remand for further proceedings.

## BACKGROUND

The People charged Mercado with a single count of murder (Pen. Code, § 187, subd. (a)), alleging that he "willfully and unlawfully and intentionally and with malice aforethought murder[ed the victim], a human being."[1]  The People also alleged firearm enhancements under sections 12022.53, subdivision (d) and 12022.5, subdivision (a).

### I.

At trial, Mercado acknowledged that he shot the victim, who later died.  The principal contested issue was whether Mercado acted in self-defense.

Security camera footage from a home near the shooting was played for the jury.  A detective testifying about the video explained that it depicted Mercado riding on his skateboard on the sidewalk in one direction, while the victim was riding a skateboard in the road in the other direction.  Mercado stepped off his skateboard and walked across a strip of grass dividing the sidewalk from the street; the victim was still on his skateboard and entered the camera view.  Mercado was in a "shooting stance" as the victim stepped off his skateboard.  About one second later, Mercado shot the victim, and the victim fell to the ground.  The video did not have any audio.

---

[1] Undesignated statutory references are to the Penal Code.

Police did not find any weapons on or near the victim.  The victim was wearing red, which is associated with the Norteños criminal street gang, while the rival Sureños criminal street gang was more associated with blue.  The shooting occurred in an area controlled by the Sureños.

## II.

The prosecution called as a witness T.S., who was Mercado's roommate at the time of the shooting.  She had known Mercado for about three and a half years.  The two were very close friends; she referred to him as her "little bro."  She recalled Mercado once showing her a gun that looked like the weapon used in the shooting.  She believed he was in a gang that wore blue with a rival gang that wore red.

T.S. recalled that Mercado had a scar where he said he had been stabbed breaking up a fight and that he once had a black eye from a fight.  Once, T.S. and Mercado went to a store, and Mercado had to leave prematurely because there were members of a rival gang there.

On the day of the shooting, Mercado left the apartment, saying he was going to run some errands.  He was wearing a black sweatshirt.  Not long after he left, he came back "panicked."  He "looked as though he was in shock" and paced back and forth in the apartment like "a child [who] had about five or six cups of espresso."

T.S. asked him what happened, but she did not understand what he was saying because he was not "making sense at that moment."  He pulled out his gun and said, "I think I shot someone dead" and asked himself, "Did I shoot the gun twice?"  He said that "someone startled him in some confrontation of some sorts happened in the street."  Mercado told T.S. that the victim said, "Hey, you," and the victim's "stance made [Mercado] think that the gentleman that he was communicating with happened to have a gun or seemed like he may have had some form of weapon on him."  Mercado said he "was afraid" and thought the victim was "packing."  He "thought the guy was actually holding something in the form of a weapon."  Mercado did not tell T.S. that he saw the

3

victim with a weapon but said something along the lines of, "This guy I swear was going to hurt me." When T.S. asked Mercado why he had shot the victim, Mercado replied, "Because if I didn't, he would have done it to me." T.S. acknowledged that Mercado was not "very specific" about the words he had exchanged with the victim and that she was not conveying "word for word" what was said.

After learning of the shooting, T.S. suggested that Mercado change his appearance. He did so by shaving his beard, cutting his hair, and removing several piercings. T.S. saw several posts on Facebook about police activity, and Mercado said they were looking for him. A few days later, T.S. went to the police and told them about Mercado.

A police officer testified that, upon arrest, Mercado told the officer that he thought the victim had a gun. Mercado did not say the victim had threatened him.

Mercado testified at trial as well. He said he was associated with the Sureños gang. Mercado acknowledged acquiring a gun about two months before the shooting, saying other gang members had shot at him or chased him and he was fed up with it. Because there were territorial disputes between two sects of the Sureños gang in town, Mercado was worried about both Sureños and Norteños.

Mercado recounted several traumatic gang-related incidents in his life. When he was 15 years old, he was approached by two gang members wearing red who asked him, "What are you banging? What's going on?" Then they shot him in the stomach. In 2016, Mercado got in a fight with someone in a park before a police officer intervened. In a separate incident in 2016, Mercado intervened in a fight involving a member of a different Sureños gang and was stabbed in his liver. He acknowledged that while the fight involved a gang member, it seemed to be more of a personal dispute. The trial court took judicial notice of a 2016 case in which a defendant was convicted of assault with force likely to produce great bodily injury on Mercado.

4

In another incident, Mercado was going down the street when three Norteños members stopped their car near him and said, "What's up fool? You banging?" They got out of the car and tried to surround him. Mercado ran away, and the driver shot at him.

In an incident at a smoke shop with T.S., Mercado recognized several gang members, who approached him and pulled up their shirts to reveal they were carrying firearms. They told him he was lucky the shop had cameras or they would shoot him or beat him up. Mercado ran away from the shop and acquired the gun used in the shooting shortly thereafter.

At the time of the shooting, Mercado was dressed in gray and black; he was not wearing red or blue. When he saw the victim, the victim raised his right hand and waved at Mercado to stop. The victim was wearing a red shirt and a hat over long hair, which made Mercado think the victim was a Norteño. The victim said to Mercado, "What's up, [expletive]? You banging?" Mercado perceived the statement as "[a]ggressive and threatening" and understood it to mean that the victim was asking him about his gang affiliation.

The victim moved his hand toward his waist while Mercado was holding his gun. Mercado was "[t]errified," like he got a "shot of adrenaline," and remembered the time he had been shot when he was 15. The victim made the same motion—moving his right hand underneath his shirt—as the gang members who had accosted him in the smoke shop. Mercado described the motion as a "fake clutch" or a bluff in which the victim pretended to have a weapon in his waistband, although Mercado did not know it was a bluff at the time. Mercado said he thought the victim "was clutching his weapon when he had his hand underneath his shirt and . . . it was just a fight or flight." He felt he had to shoot the victim to avoid being killed.

After shooting the victim, Mercado fled. He returned to the apartment where he "summarized" what happened to T.S., though he did not tell her "word for word" what happened. He testified that T.S. "doesn't have the greatest of memories," although

5

"everything that I basically did she somewhat remembered." He stated that T.S. "doesn't remember everything I said or the exact sequence of things."

During cross-examination, the prosecutor had an extended exchange with Mercado aimed at establishing that his account of his statements to T.S. after the shooting differed from T.S.'s recollection of his statements. The prosecutor stated that T.S. did not testify that Mercado had told her he needed to defend himself. Defense counsel objected, saying the prosecutor was argumentative and mischaracterizing prior testimony, and the trial court sustained the objection. The prosecutor also challenged Mercado's testimony that he had told T.S. he was verbally threatened, that the victim had reached under his shirt, and that the victim had said, "what's up" or "you banging." Mercado disagreed with the prosecutor's characterizations, insisting that he had told T.S. all those things. Defense counsel again objected, and the trial court again sustained the objection, telling the jury, "we usually do not ask the witness, hey, is the other witness telling the truth or are they accurate or not. You judge the testimony of each witness by its own standards."

Finally, Mercado testified about a note he left in his cell while in pretrial detention. The note, which was addressed to his mother, said he was "sorry that your son is now a murdering piece of shit behind bars." He testified that his statement did not mean that he acted with intent to kill, but rather that someone had died because of his actions. He characterized the writing as a suicide note.

### III.

In closing arguments, the prosecutor argued that Mercado acted "willfully, deliberately, and with premeditation" in killing the victim. She maintained that he did not act in self-defense but instead had provoked the confrontation himself. She argued that Mercado had a "gang mentality" and that "killing a civilian . . . would earn him . . . street cred, that street cred that he desperately wanted."

Defense counsel urged the jury to acquit Mercado because he had acted in perfect self-defense. Counsel argued that Mercado had been a victim of gang violence in several

6

earlier incidents and that those incidents informed his belief that the victim was going to hurt him. Counsel told the jury that imperfect self-defense could also apply but said that the jury's "first choice" should be perfect self-defense.

The trial court instructed the jury on first and second degree murder as well as voluntary manslaughter. It also instructed the jury on perfect and imperfect self-defense.

The jury found Mercado guilty of second degree murder and found the enhancement allegations true. The trial court dismissed the firearm enhancement under section 12022.5, subdivision (a) and declined to strike the section 12022.53, subdivision (d) enhancement. The court sentenced Mercado to 40 years to life in state prison.

## DISCUSSION

### I.

Mercado first contends that the trial court erred by failing to include language in the instruction on imperfect self-defense that the jury could consider threats from others to assess whether Mercado was justified to act in self-defense. He argues that the trial court had a sua sponte duty to instruct the jury on prior threats, or, alternatively, that defense counsel rendered ineffective assistance by failing to request the instruction.

### A.

At trial, the court gave the jury various instructions related to Mercado's theory of self-defense. With respect to perfect self-defense, it instructed the jury that the "defendant is not guilty of murder or manslaughter if he was justified in killing someone in self-defense. The defendant acted in lawful self-defense if, one, the defendant reasonably believed that he was in [imminent] danger of being killed or suffering great bodily injury. Two, the defendant reasonably believed that the immediate use of deadly force was necessary to defend against that danger. And three, the defendant used no more force than reasonably necessary to defend against that danger."

7

The instruction further stated: "When deciding whether the defendant's beliefs were reasonable, consider all the circumstances as they were known to and appeared to the defendant and consider whether a reasonable person in a similar situation with similar knowledge would have believed. [¶] If the defendant's beliefs were reasonable, the danger does not need . . . to have actually existed. Someone who has been threatened or harmed by a person in the past is justified in acting more quickly or taking greater self-defense measures. [If y]ou find the defendant received a threat from someone else that he reasonably associated with the alleged victim, you may consider that threat in deciding whether the defendant was justified in acting in self-defense."

To instruct on imperfect self-defense, the trial court said, as relevant here, "Defendant acted in imperfect self-defense—and again forget defense of others. It's only Mr. Mercado here—if, one, the defendant actually believed that he was in [imminent] danger of being killed or suffering great bodily injury. And two, the defendant actually believed that the immediate use of deadly force was necessary to defend against that danger, but at least one of those beliefs was unreasonable. [¶] Belief in future harm is not sufficient no matter how great or how likely the harm is believed to be. In evaluating the defendant's beliefs, consider all the circumstances as they were known and appeared to the defendant." The trial court did not repeat the antecedent threats language used in the complete self-defense instruction, which said that the jury could consider threats from "someone else" reasonably associated with the victim.

The trial court also read a limiting instruction regarding evidence of gang activity, saying the evidence could be considered to determine whether "the defendant actually believed in the need to defend himself and acted under fear of imminent death or great bodily injury to himself."

B.

Mercado acknowledges that he did not request an instruction concerning prior threats with respect to imperfect self-defense but contends that the trial court had a duty

8

to provide the instruction sua sponte.  A trial court is obligated "to instruct sua sponte 'on those general principles of law that are closely and openly connected with the facts before the court and necessary for the jury's understanding of the case.' " (*People v. Simon* (2016) 1 Cal.5th 98, 143.)  Instructions that "relate particular facts to a legal issue in the case or 'pinpoint' the crux of a defendant's case . . . are not required to be given sua sponte." (*People v. Saille* (1991) 54 Cal.3d 1103, 1119.)

In *People v. Garvin* (2003) 110 Cal.App.4th 484, 488-489, the Court of Appeal considered whether an instruction on antecedent threats covered "general principles of law" and was thus required to be given sua sponte, or merely addressed "specific points or special theories which might be applicable to a particular case" and was thus optional "absent a request for such an instruction."  Observing that the instruction "highlights a particular aspect of [the self-defense] defense and relates it to a particular piece of evidence," the court concluded that "this is a specific point and is not a general principle of law" and "the trial court was not obligated to instruct on this issue absent request." (*Id.* at p. 489.)  We agree with this analysis:  The omitted prior threats language was not necessary for the jury to understand the elements of imperfect self-defense.  Instead, the language was aimed at relating the particular facts of the gang-related threats Mercado experienced to that defense.  (See *People v. Saille*, *supra*, 54 Cal.3d at p. 1119.)

Mercado urges us not to follow *People v. Garvin*, arguing that, without a reference to prior threats, the imperfect self-defense instruction affirmatively diverted jurors from considering those threats and misled the jury, particularly because the court did instruct the jury on prior threats in the perfect self-defense instruction.  We disagree with this reading of the instructions.  The imperfect self-defense instruction correctly recited the elements of the defense.  It also told jurors to "consider *all the circumstances* as they were known and appeared to the defendant." (Italics added.)  The trial court further instructed the jury that it could "consider evidence of gang activity" for the purpose of deciding whether "the defendant actually believed in the need to defend himself and

9

acted under fear of imminent death or great bodily injury to himself." Jurors were also told to consider all the instructions together. Taken as a whole, these instructions did not mislead the jury into believing that it could not consider prior threats from gang members when evaluating Mercado's mindset at the time of the shooting.

C.

Mercado alternatively claims that his attorney's failure to request a prior threats instruction as part of the imperfect self-defense instruction reflects constitutionally ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a defendant must show " 'that counsel's performance was deficient, and that the defendant was prejudiced, that is, there is a reasonable probability the outcome would have been different were it not for the deficient performance.' " (*People v. Woodruff* (2018) 5 Cal.5th 697, 736; see generally *Strickland v. Washington* (1984) 466 U.S. 668, 687.) A reviewing court can resolve a claim of ineffective assistance of counsel on the ground of lack of sufficient prejudice without determining whether the attorney's performance was deficient. (*Strickland v. Washington*, *supra*, at p. 697; see also *People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.)

Even if counsel's omission rose to the level of deficient performance, it did not prejudice Mercado. As explained above, the instructions adequately advised the jury that it could consider Mercado's history of gang-related incidents when determining whether he was justified in acting in self-defense. In addition, in closing arguments, both defense counsel and the prosecutor assumed Mercado's gang history was relevant to the self-defense claims. The prosecution argued that Mercado's prior history of gang violence suggested that he was not acting in self-defense because it showed that he was motivated to seek "street cred." She maintained that Mercado had joined the gang voluntarily, while defense counsel argued that violent experiences explained why Mercado felt he had to act quickly to protect himself. In other words, the jury repeatedly received the message that the prior gang incidents were relevant to Mercado's state of mind at the

10

time of the shooting. (See *People v. Gonzales* (1992) 8 Cal.App.4th 1658, 1664-1665.) We therefore conclude that it is not reasonably probable that the result of the trial would have been different, even had trial counsel requested a specific instruction on prior threats as part of the imperfect self-defense instruction.

## II.

Mercado next contends that the trial court violated his rights to due process and deprived him of notice of the charges when it instructed the jury on first degree murder, even though the information only charged murder generically under section 187, subdivision (a). He acknowledges that the California Supreme Court upheld the use of generic murder charges in *People v. De La Cour Soto* (1883) 63 Cal. 165, disapproved on another ground in *People v. Gorshen* (1959) 51 Cal.2d 716, and in other more recent cases.

In *People v. De La Cour Soto*, *supra*, 63 Cal. 165, 166, the People charged the defendant using only the language of the murder statute. Our state Supreme Court rejected the defendant's argument that, without a specific allegation in the charging document, he could not be convicted of first degree murder. (*Ibid.*) The court concluded that "it is sufficient to charge the offense committed in the language of the statute defining it. As the offense charged in this case included both degrees of murder, the defendant could be legally convicted of either degree warranted by the evidence." (*Ibid.*) In the decades since, the court has reaffirmed this conclusion. (See, e.g., *People v. Carey* (2007) 41 Cal.4th 109, 132 ["when an accusatory pleading charges 'murder, without specifying the degree,' it will be sufficient to charge murder in any degree"]; *People v. Hughes* (2002) 27 Cal.4th 287, 369 ["an accusatory pleading charging a defendant with murder need not specify the theory of murder upon which the prosecution intends to rely"].) These cases have also found no violation of federal constitutional rights under circumstances similar to those here. (*People v. Carey*, *supra*, at p. 132.)

11

Mercado invites us to depart from these decisions or to urge the state Supreme Court to revisit its precedents. We decline the invitation. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [state Supreme Court's decisions "are binding upon and must be followed by all the state courts of California"].)

## III.

Finally, Mercado contends that the trial court erred when it instructed the jury to "consider with caution" evidence of his pretrial oral statements. As explained above, T.S. testified about numerous statements that Mercado made immediately after the shooting. Some of the statements supported the prosecution's case that Mercado shot and killed the victim, while others supported Mercado's theory of self-defense. With respect to evidence of Mercado's pretrial statements, the trial court instructed the jury: "You've heard evidence that the defendant made oral statements before the trial. You must decide whether or not the defendant made any such statements in whole or in part. If you decide that the defendant made such statements, consider the statements along with all the other evidence in reaching your verdict. It's up to you to decide how much importance to give to such statements. You must consider with caution evidence of defendant's oral statement unless it was written or otherwise recorded." Mercado claims that this instruction unfairly directed the jury to view with suspicion his statements to T.S. that he acted in self-defense.

## A.

As an initial matter, the People concede, and we agree, that Mercado's claim can be considered on appeal even though his counsel failed to object to the instruction in the trial court. That is because instructional errors affecting a defendant's substantial rights are reviewable even absent an objection. (§ 1259; *People v. Tran* (2022) 13 Cal.5th 1169, 1199.)

The current pattern version of CALCRIM No. 358, which was in effect at the time of Mercado's trial, says: "You have heard evidence that the defendant made [an] [oral]

12

[and] [a] [written] statement[s] (before the trial/while the court was not in session). You must decide whether the defendant made any (such/of these) statement[s], in whole or in part. If you decide that the defendant made such [a] statement[s], consider the statement[s], along with all the other evidence, in reaching your verdict. It is up to you to decide how much importance to give to the statement[s]. [¶] [Consider with caution any statement made by (the/a) defendant tending to show (his/her) guilt unless the statement was written or otherwise recorded.]" (Original brackets.)

The purpose of the cautionary statement in the bracketed last sentence of the instruction is "to aid the jury in evaluating whether the defendant actually made the statement." (*People v. Diaz* (2015) 60 Cal.4th 1176, 1184.) Our state Supreme Court has explained that a witness's testimony reporting inculpatory statements by a defendant "is considered dangerous, first, because it may be misapprehended by the person who hears it; secondly, it may not be well remembered; thirdly, it may not be correctly repeated.' " (*Id.* at p. 1185.) The court has further observed that " ' "[n]o other class of testimony affords such temptations or opportunities for unscrupulous witnesses to torture the facts or commit open perjury, as it is often impossible to contradict their testimony at all, or at least by any other witness than the party himself." [Citation.]' [Citation.] Even if the party testifies, it may be difficult to convincingly dispute evidence of an extrajudicial admission because the party has an obvious interest in the outcome of a case." (*Ibid.*) "Thus, the cautionary instruction applies to any extrajudicial oral statement by the defendant that is used by the prosecution to prove the defendant's guilt." (*Id.* at p. 1187.)

The cautionary instruction does not apply to the defendant's oral statements that are *not* used to prove the defendant's guilt. (See *People v. Diaz*, *supra*, 60 Cal.4th at p. 1187; *People v. Powell* (2018) 6 Cal.5th 136, 169 [discussing similar cautionary instruction].) As the bench notes to CALCRIM No. 358 provide, "[i]f the jury heard only exculpatory statements by the defendant, do not give the bracketed paragraph" containing the cautionary statement.

13

In this case, the trial court did not instruct the jury using the applicable version of CALCRIM No. 358. Instead, it instructed the jury to "consider with caution evidence of defendant's *oral statement*"—without limiting the cautionary admonition to statements that tended to show Mercado's guilt. (Italics added.) Thus, the instruction directed jurors to view with skepticism not only Mercado's incriminating oral statements but also his statements that were exculpatory. That was error because CALCRIM No. 358's cautionary statement is not intended to apply to a defendant's oral statements that are helpful to his or her defense. (See *People v. Diaz*, *supra*, 60 Cal.4th at pp. 1187, 1193; *People v. Powell*, *supra*, 6 Cal.5th at p. 169.)

The People argue that the instruction was nevertheless proper because Mercado placed T.S.'s recollection of his prior statements at issue. We do not agree with this reading of Mercado's testimony. Rather than challenging T.S.'s recounting of events, Mercado explicitly testified that T.S. was not lying during her testimony and said, "everything that I basically did she somewhat remembered," even though her testimony did not match his memory "word for word." Further, while it is true that Mercado said that T.S.'s "memory is off," his statement was in direct response to an incorrect representation by the prosecution that T.S. had not testified that Mercado said he needed to defend himself. And more fundamentally, as Mercado points out, it would not have made sense for him to seek to undermine T.S.'s credibility concerning his pretrial statements because they were direct evidence supporting his self-defense theory.[2]

---

[2] Although not addressed by either party's brief, we note that the California Supreme Court rejected a defendant's challenge to the same cautionary instruction in *People v. Tran*, *supra*, 13 Cal.5th at pp. 1200-1201. The defendant there asserted that the instruction should have told the jury that "it need not have viewed with caution" a co-defendant's exculpatory statements, relayed through two witnesses, that he (the co-defendant) was the actual killer. (*Id.* at p. 1200.) The court found no error "because there was ample reason for the jury to treat [the co-defendant's] statements with caution." (*Ibid.*) The co-defendant's "accounts were inconsistent given that they contained conflicting statements as to the roles [the co-defendant and defendant] played in the murder." (*Id.* at pp. 1200-1201.) The court concluded that "[t]elling jurors to exercise

14

B.

The question then becomes whether the instructional error prejudiced Mercado. The erroneous provision of a cautionary instruction is reviewed for prejudice under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Xiong* (2020) 54 Cal.App.5th 1046, 1081-1082; see also *People v. Diaz*, *supra*, 60 Cal.4th at p. 1195 [applying *Watson* to trial court's failure to give cautionary instruction].)

Relying on *Cool v. United States* (1972) 409 U.S. 100 (*Cool*), Mercado argues that the error was of federal constitutional dimension and that the harmless error standard set forth in *Chapman v. California* (1967) 386 U.S. 18 therefore applies. Mercado's argument, however, "overreads *Cool*." (*People v. Tran*, *supra*, 13 Cal.5th at p. 1199.) In *Cool*, the jury was instructed to ignore defense accomplice testimony unless the jury believed beyond a reasonable doubt that the testimony was true. (*Cool*, at p. 102.) The United States Supreme Court held that the instruction violated the defendant's federal due process rights because it obstructed his ability to present exculpatory evidence "by totally excluding relevant evidence unless the jury makes a preliminary determination that it is extremely reliable" and reduced the prosecution's burden of proof by "creating an artificial barrier to the consideration of relevant defense testimony." (*Id.* at p. 104.) The high court explained that "there is an essential difference between instructing a jury on the care with which it should scrutinize certain evidence in determining how much weight to accord it and instructing a jury, as the judge did [there], that as a predicate to the consideration of certain evidence, it must find it true beyond a reasonable doubt."

---

caution in the face of such conflicting statements from the same individual aligns with the generic, commonsense instructions on how to assess witness testimony. (See *People v. Holloway* (2004) 33 Cal.4th 96 [finding no harm from instructions that were 'supported by common sense, which many jurors are likely to indulge even without an instruction'].)" (*Id.* at p. 1201.) In this case, the People do not suggest that Mercado's pretrial statements were similarly conflicting or that the trial court's cautionary admonition here had no greater effect than a generic instruction for assessing witness testimony. We therefore do not see the facts here as similar to those in *Tran*.

15

(*Ibid.*)  Whereas the latter instruction impermissibly lightens the prosecution's burden, "[n]o constitutional problem is posed when the judge instructs a jury to receive the prosecution's accomplice testimony 'with care and caution.' " (*Id.* at p. 103.)

In this case, the challenged instruction did not tell the jury that it had to find any facts true beyond a reasonable doubt before considering Mercado's exculpatory statements.  It was a standard cautionary instruction that directed the jury on the care with which it should consider certain evidence.  (*People v. Tran*, *supra*, 13 Cal.5th at p. 1200.)  As our state Supreme Court has explained, such a cautionary instruction does not conflict with the requirement of proof beyond a reasonable doubt.  (*Ibid.*)

Mercado's reliance on a second instruction at issue in *Cool* is also unavailing.  *Cool* deemed it reversible error for the trial court to have instructed the jury that it could use accomplice testimony to convict, but not to acquit, the defendant.  (*Cool*, *supra*, 409 U.S. at p. 103, fn. 4.)  The instruction challenged here is not comparable.  It applied to all of Mercado's oral statements and did not direct the jury to use them either to convict or acquit.  Nothing in *Cool* therefore persuades us that *Chapman* applies in this case.

Under *Watson*, we "ask whether there is a reasonable probability the jury might have reached a different result had it been instructed correctly." (*People v. Hendrix* (2022) 13 Cal.5th 933, 948.)  A " ' " ' "probability" in this context does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility.' " ' " (*Id.* at p. 944.)  A reviewing court must "focus solely on whether 'the error affected the outcome' [citation], not on whether the court personally believes that outcome was correct." (*Id.* at p. 948.)  In cases where a trial court fails to instruct the jury to view incriminating oral statements by the defendant with caution, courts measure prejudice by " 'examin[ing] the record to see if there was any conflict in the evidence about the exact words used, their meaning, or whether the [statements] were repeated accurately.' " (*People v. Diaz*, *supra*, 60 Cal.4th at p. 1195.)

16

In light of the evidence and arguments of the parties, we conclude that there is a "reasonable chance" that the jury would have reached a different result had it been instructed correctly. (*People v. Hendrix*, *supra*, 13 Cal.5th 933, 949.) First, self-defense was unquestionably the key issue in this case. Mercado conceded that he shot the victim, and his entire theory of the case centered on whether he had the necessary state of mind to show that he acted in self-defense. The prosecution acknowledged this as well, telling jurors "this case hinges on the defendant's state of mind that day."

Second, Mercado's credibility was central to his claim of self-defense, and his pretrial oral statements were directly relevant to his believability as a witness. During cross-examination, the prosecution repeatedly challenged Mercado by suggesting that he never told T.S. that he had been threatened by the victim. In its closing argument, the prosecution maintained that Mercado repeatedly lied on the stand. In response, the defense emphasized Mercado's "habit of spitting out the truth," as demonstrated by his pretrial statements to others, including T.S., after the shooting.

Third and perhaps most importantly, in its rebuttal argument, the prosecution maintained that Mercado never told T.S. that he had acted in self-defense. It argued: "Now, the defense said that he ran right home terrified. [T.S.] said that he came in panicked like he was in the middle of an adrenaline rush. I think she described it as a kid who had six espressos or something along those lines. And then he said, what's up, what's that or something along those lines, but no threat was articulated. [¶] If he perceived what [the victim] said, if [the victim] said anything at all as an actual threat, then why didn't he tell [T.S.] that. Why didn't he tell [T.S.] about this fake clutch. Why didn't he tell her 'What's up,' expletive, 'you banging,' because he didn't say that. That wasn't said. Wouldn't that have been the first thing out of his mouth, a Norteno just rolled up on me. I had to shoot him and run. That's not what he said. He said some dude, I don't know, on a skateboard said something. I don't remember, so I shot him."

Under these circumstances, where self-defense was the dispositive issue, the prosecution directly challenged Mercado's credibility, and the prosecutor expressly called into question whether Mercado had, in fact, told T.S. that he acted in self-defense, we conclude that there is more than an abstract possibility that the jury would have reached a different verdict without the trial court's direction to view evidence of Mercado's oral statements "with caution."  In other words, there is a reasonable chance the erroneous instruction affected the jury's verdict.  We therefore must reverse the conviction.

DISPOSITION

The judgment is reversed.  The matter is remanded for further proceedings.


/s/
FEINBERG, J.


We concur:


/s/
KRAUSE, Acting P. J.


/s/
BOULWARE EURIE, J.


18