Filed 6/30/25  P. v. Esparza CA3
Opinion following transfer from Supreme Court

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JESSE ADRIAN ESPARZA,<br><br>Defendant and Appellant. | C091260<br><br>(Super. Ct. No. STK-CR-FE-2017-0013674)<br><br>OPINION ON TRANSFER |

After a member of his group stole a 12-pack of beer, defendant Jesse Adrian Esparza shot and beat a store employee trying to recover the beer.  A year later, on Valentine's Day, 2017, defendant shot at several men who asked about the well-being of his then-girlfriend, killing one of the men.  A jury found defendant guilty of one count of premeditated murder, three counts of attempted premeditated murder, one count of robbery, and two counts of being a felon in possession of a firearm.  Defendant contends the trial court erred in failing to instruct the jury on voluntary intoxication for the Valentine's Day murder and his upper term sentences must be remanded for resentencing

1

in light of Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1) (Senate Bill 567).

After we filed our original opinion affirming the judgment, the California Supreme Court granted defendant's petition for review and transferred the matter to us to reconsider our opinion in light of *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*). We vacated our opinion. On reconsideration, we do not change our conclusion as to the jury instruction issue presented by defendant. Except to remand the matter of resentencing, we affirm the judgment.

## FACTS AND HISTORY OF THE PROCEEDINGS

### Liquor Store Robbery

The robbery was caught on the liquor store's surveillance system. On January 16, 2016, defendant and three other men drove up to the liquor store at about 1:00 a.m. Two men got out of the car and went into the store. The third man stayed in the car. While the two men were in the store, defendant got out of the car and wandered around the parking area, swaying, and using his cellular telephone: watching something, taking selfies, rapping or talking to someone on a video call. At one point, the man in the car got out, handed defendant a gun, and returned to the car.

Defendant walked into the store and then walked out but stood in the doorway for a few seconds before walking away.

The video shows one of the men from the car running out of the store with a 12-pack of beer. A store employee chased after him.

The last thing the store employee remembered was defendant turning around and then the employee got hurt. The video shows defendant shot the employee as the employee approached him and then defendant attacked him on the ground after the employee fell. The men drove away.

2

The employee returned to the store bleeding profusely from his head and arm. He was shot four times. He also had injuries to his nose, top of his head, back of his head and ear.

Valentine's Day Murder

A year later, on Valentine's Day, 2017, defendant, his then-girlfriend (now wife), and several others had a get-together at his aunt's home. Defendant's wife bought the alcohol for the gathering. This included a 12-pack of Mike's Hard Lemonade, some rum, and a 12- or 18-pack of beer. Neither she, nor anyone else, testified as to how much defendant or anyone else drank that night. All defendant's wife could testify to is she got so drunk that day she did not remember anything that happened after 9:00 p.m. She stated she did not remember defendant showing up at the home, but it must have been after 9:00 p.m. The only reason defendant's wife knows he was there is she later saw videos of that night. At the same time, she did not remember defendant being at the house, but was sure she and defendant were drinking.

Defendant's wife identified six cellular telephone Snapchat videos taken by defendant the night of the murder between 9:52 and 10:23 p.m. Five of the videos showed defendant drinking something from a plastic cup and singing along with rap music playing in the background. Generally, defendant was smiling, his eyelids were drooping, and he was singing and swaying with the music. He was able to keep up with and timely match the lyrics of the songs playing in the background and his speech did not appear slurred. One video showed defendant holding a bottle of Mike's Hard Lemonade that was about three-quarters full, but not drinking from it. The prosecution also showed the jury photos of several glass bottles found throughout the house. The inventory included a quarter-full bottle of brandy, two empty bottles of Mike's Hard Liquor, and five empty beer bottles.

3

Defendant did not testify and no testimony was presented at trial that defendant was intoxicated, or how much alcohol defendant consumed over any period of time that evening.

E.V. testified he and four other family members were drinking beer and listening to music in their garage down the street from the imminent shooting. They heard a loud blood-curdling scream from a woman for a couple minutes. In an effort to drown out that noise, they turned up the volume on their music. When the screaming continued, the men went down the street to investigate.

E.V. and T.V. testified they saw a woman on the ground and a guy with long hair verbally fighting. E.V. asked the man is everything okay. In response, the man pulled out his gun from his waistband and pointed it at E.V.'s head, shouting for them to mind their own business. As E.V. and his friends retreated, the man shot E.V. four times. The man also shot and killed Ricardo Valenzuela.

Another neighbor, D.N., also heard a woman screaming. She went out to investigate and saw a woman on the ground and defendant standing by her. D.N. saw defendant fire the gun at the men who came to investigate, including her son-in-law, E.V. Originally, D.N. told officers a different man was the shooter. At trial, she stated she was confused and mistaken that night.

Neighbor R.S. testified he heard gunshots, yelling and screaming. He went to look out of his window and saw defendant with a gun and another man fall to the ground who was likely shot and dead or dying. The murder was caught on the doorbell camera located at R.S.'s home.

The prosecution played the doorbell camera video for the jury which showed the five men approach defendant and ask what was happening. Defendant responded with a string of expletives. The men then ran back the way they came and five shots rang out from the gun in defendant's hand. The video showed defendant shooting Ricardo Valenzuela twice in the back, killing him. Defendant continued to yell at the men and

4

then pistol-whipped and kicked the man on the ground as he was dying or was already dead.

Police received the call about the shooting at 11:40 p.m.

An information charged defendant with premeditated murder (Pen. Code, § 187, subd. (a); count 1; statutory section citations that follow are found in the Penal Code unless otherwise stated); three counts of attempted premeditated murder (§§ 664/187, subd. (a); counts 2, 3, and 5); being a felon in possession of a firearm (§ 29800, subd. (a)(1); counts 4 and 7); and second degree robbery (§ 211; count 6). As to count 3, the information alleged defendant intentionally and personally discharged a firearm. (§ 12022.53, subd. (c).) As to counts 1, 2, 5, and 6, the information alleged defendant intentionally and personally discharged a firearm causing great bodily injury or death. (§ 12022.53, subd. (d).) The information alleged as to counts 1, 2, 3, 5, and 6 defendant used a firearm in the commission of a felony. (§ 12022.5, subd. (a).) Finally, as to counts 2, 5, and 6, the information alleged defendant inflicted great bodily injury. (§ 12022.7, subd. (a).)

A jury found defendant guilty of all charges and found all charged enhancements to be true.

The trial court noted as factors in aggravation that defendant had engaged in violent conduct that indicates a serious danger to society and a high degree of cruelty. The judge found the victims in both cases were particularly vulnerable. The trial court highlighted the liquor store employee was just trying to get back the beer defendant's accomplice stole, and defendant used a gun without remorse and after he shot the victims, he pistol-whipped them. The trial court further found defendant placed no value on human life, had prior convictions for other crimes, and was on probation for gun charges at the time of the offense. The only factor in mitigation was defendant's involvement in the Center for Fathers and Families, but the trial court found that involvement stood in stark contrast to the crimes committed by defendant.

5

As to count 1, first degree murder, the trial court sentenced defendant to 25 years to life, plus a consecutive 25 years to life for the gun enhancement under section 12022.53, subdivision (d). On the attempted premeditated murder counts 2 and 5, the trial court sentenced defendant to consecutive terms of life with the possibility of parole, plus consecutive 25-year to-life terms under section 12022.53, subdivision (d). For counts 1, 2 and 5, the trial court struck the remaining enhancements on these charges as lesser included offenses. For the attempted premeditated murder charged in count 3, the trial court sentenced defendant to a consecutive life with the possibility of parole, plus a 20-year-to-life sentence on the gun enhancement under section 12022.53, subdivision (c).

Defendant stipulated he is prohibited from owning, possessing, or receiving a firearm as a result of a prior felony conviction. For the felon in possession of firearm counts (counts 4 and 7), the trial court sentenced defendant to a concurrent upper term of three years because defendant was on probation for the same charges at the time of the offenses. Finally, for the robbery (count, 6), the trial court imposed the upper term of five years, plus a consecutive term of 25 years to life, but stayed the sentence pursuant to section 654. The court chose to impose the upper term on count 6 due to the violent nature of the robbery that showed a level of callousness and cruelty.

Defendant timely appealed. After delays for record preparation and briefing continuances, the case was fully briefed on September 6, 2022, and was assigned to this panel shortly thereafter.

DISCUSSION

I

*The Jury Instruction on Voluntary Intoxication*

Defendant contends the trial court committed error by not instructing the jury on voluntary intoxication.

6

The trial court had to determine whether there was substantial evidence to justify giving the instruction. This court reviews that determination de novo. (*People v. Waidla* (2000) 22 Cal.4th 690, 730.)

During trial, the trial court informed the parties it was "struggling" with the voluntary intoxication instruction. Its initial inclination was to give the jury instructions on voluntary intoxication, but it reserved its decision for additional research.

At the next jury instruction conference, the court said it did not believe there was sufficient evidence of voluntary intoxication. Defense counsel disagreed, arguing the Snapchat videos demonstrated sufficient evidence of defendant's intoxication for the instruction because they showed him drinking, his eyes glazed, and slurring his speech. The prosecutor suggested the court should give the instruction "just in case." The trial court responded, "I don't know about that. I watched those videos, he's holding a cup in two of the videos, I don't know what's in the cup. And the third video he's holding a Mike's hard lemonade but he wasn't drinking it in the video and he's singing in the videos, they're singing. I don't think there's enough evidence to give voluntary intoxication. I can't say his eyes were glazed over because of drinking. I can't say his speech was slurred because of drinking. Mrs. Esparza never testified as to the defendant's state of sobriety, she said she was drunk, she didn't know what the defendant was doing. I don't think there's enough."

Counsel pointed to the evidence of beer bottles in the home. The trial court countered there was no evidence of who the bottles belonged to, or who drank the beer that was in them. The court again reserved judgment on this issue.

Ultimately, the trial court declined to instruct the jury on voluntary intoxication finding there was not substantial evidence of defendant's intoxication to warrant the instruction. The trial court based its ruling on the fact no one testified defendant was intoxicated or that his behavior displayed he was intoxicated. His wife never testified as to how much defendant drank, or whether he was intoxicated. In all the videos, he had a

cup in his hand, but he never drank on camera. Further, the court noted the videos were similar to the way defendant swayed when on camera at the liquor store robbery a year prior. Defendant's counsel told the court despite the lack of instruction, he would still argue defendant was intoxicated, and among other arguments, raised the fact defendant was drinking in his closing argument.

The relevant instruction, CALCRIM No. 625, states: "You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant acted with an intent to kill[,] [or] [the defendant acted with deliberation and premeditation[,]] [[or] the defendant was unconscious when (he/she) acted[,]] [or the defendant <insert other specific intent required in a homicide charge or other charged offense>.]"

As a general matter, a criminal defendant is entitled, on request, to instructions that pinpoint the theory of the defense when the instruction is supported by substantial evidence. (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1142, citing *People v. Saille* (1991) 54 Cal.3d 1103, 1119.) Even when requesting a voluntary intoxication instruction, a "defendant is entitled to such an instruction only when there is substantial evidence of the defendant's voluntary intoxication and the intoxication affected the defendant's 'actual formation of specific intent.' (*People v. Horton* (1995) 11 Cal.4th 1068, 1119; see also [ ] *Saille*[, at p. 1117] [explaining that a defendant charged with murder is free to show that 'because of his mental illness or voluntary intoxication, he did not *in fact* form the intent unlawfully to kill'].)" (*People v. Williams* (1997) 16 Cal.4th 635, 677.) Attempted murder similarly is a specific intent crime that requires a specific intent to kill. (*People v. Gonzalez* (2012) 54 Cal.4th 643, 664.)

In this context, substantial evidence is "evidence sufficient to 'deserve consideration by the jury,' not 'whenever any evidence is presented, no matter how weak.' " (*People v. Williams* (1992) 4 Cal.4th 354, 361.) For example, our Supreme Court concluded testimony the defendant was "probably spaced out" on the morning of

8

the killings did not rise to the level of substantial evidence that required the giving of this instruction. (*People v. Williams*, *supra*, 16 Cal.4th at p. 378.)

Here, defendant invites us to review the Snapchat videos to inform our decision on this issue, and we have. This video evidence supports an inference defendant was likely drinking two hours prior to the Valentine's Day murder and attempted murders. But that is as far as it goes. The videos show a young man capable of singing along with the lyrics of the songs he was listening to and did not show him drinking any alcohol. Contrary to defendant's characterization, we do not hear defendant slurring his words as he sang along with the music. Further, while his eyes may have been a bit glassy, we conclude this is not substantial evidence of intoxication or that defendant's intoxication affected his ability to formulate the specific intent required for the crimes charged.

Importantly, no person testified how much alcohol defendant drank; what his blood-alcohol level was; or how his consumption of alcohol affected his ability to formulate specific intent, to deliberate or premeditate. There was no evidence how much he drank before the videos, whether he stopped drinking after the last video or drank more. Further, defendant's conduct captured on the Snapchat videos mirrored his actions in the parking lot during the liquor store robbery where there was no evidence or inference defendant had consumed any alcohol. Thus, we conclude there was no substantial evidence defendant was intoxicated, much less any evidence establishing his intoxication affected his ability to formulate specific intent. The trial court did not err.

## II

### *Senate Bill 567*

In our prior opinion, we determined that, while Senate Bill 567 applied retroactively to defendant's nonfinal judgment, remand for resentencing was not required because it was not reasonably probable the jury would have found "not true" the three aggravating factors the trial court used to impose the upper term on counts 4, 6 and 7.

9

The California Supreme Court ordered this court to reconsider defendant's request for resentencing in light of *Lynch*. Having done so, we now conclude that we must reverse defendant's sentence and remand for resentencing in compliance with Senate Bill 567. The People concede the case should be remanded for sentencing.

At the time defendant was sentenced in 2020, a trial court when sentencing based on a triad had discretion to choose between a lower, middle, or upper prison term based on which term best served the interests of justice. (*Lynch, supra,* 16 Cal.5th at p. 747.) Exercising its discretion under that statute, the trial court sentenced defendant to the upper term on count 4 (defendant was on probation at the time of the offense—Cal. Rules of Court, rule 4.421(b)(4)); count 6 (the violent nature of the robbery demonstrated defendant's callousness and cruelty—Cal. Rules of Court, rule 4.421(a)(1)); and count 7 (defendant was on probation for the same offense—Cal. Rules of Court, rule 4.421(b)(4)). These aggravating factors were not found true by a jury or stipulated by defendant.

Senate Bill 567 became effective January 1, 2022. (Stats. 2021, ch. 731; Cal. Const., art. IV, § 8, subd. (c).) The act generally prohibits a trial court from imposing an upper term sentence except where there are circumstances in aggravation of the crime that justify imposing the upper term, and the facts underlying those circumstances (1) have been stipulated to by the defendant, or (2) have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. (§ 1170, subd. (b)(1), (2), added by Stats. 2021, ch. 731, § 1.3.) An exception to this rule authorizes the court to consider defendant's prior convictions in determining sentencing based on certified records of conviction without submitting the prior convictions to the jury. (§ 1170, subd. (b)(3), added by Stats. 2021, ch. 731, § 1.3.)

In *Lynch*, the Supreme Court considered when remand for resentencing is required under section 1170, subdivision (b) for defendants who were sentenced before the amended statute's effective date. (*People v. Lynch, supra,* 16 Cal.5th at pp. 742-743.)

10

The court held, "[A] sentence imposed under former section 1170[, subdivision](b) must be reversed and remanded unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the court relied to conclude the upper term was justified, or that those facts were otherwise proved true in compliance with the current statute." (*Lynch,* at p. 743.) *Lynch* also concluded a failure to meet the statute's requirements may be considered harmless if " 'the omitted [facts] [were] uncontested and supported by overwhelming evidence.' " (*Lynch, supra,* 16 Cal.5th at p. 775.)

In our prior opinion, we concluded it was not reasonably probable a jury would not have come to the same conclusion as the trial judge on each of these factors utilizing the test articulated by *People v. Watson* (1956) 46 Cal.2d 818. Under the more restrictive test required by *Lynch,* however, we cannot conclude beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the court relied to impose the upper term sentence on counts 4, 6, and 7.

As to count 6, the trial court found the violent nature of the robbery demonstrated defendant's callousness and cruelty. (Cal. Rules of Court, rule 4.421(a)(1).) The robbery was caught on camera and to foil the recovery of a 12-pack of beer, defendant shot the employee four times at point-blank range and then defendant attacked him on the ground after the employee fell. The trivial nature of the property he sought to retain by using lethal force and the rage he exhibited in continuing the attack while the victim was shot and lying on the ground demonstrates cruelty and callousness to us. Given the subjective nature of this factor, however, we cannot conclude beyond a reasonable doubt a jury would have found this fact that the robbery demonstrated defendant's callousness and cruelty to be true.

Applying *Lynch* to counts 4 and 7, the question presented was whether defendant was on probation for being a felon in possession of a firearm. The documentation on this point was the probation report, not a certified record of conviction or court document

11

demonstrating this fact.  Given this, we cannot conclude beyond a reasonable doubt the jury would have found this fact to be true.  While the statement in a probation report is a strong and reliable indicator, it is far from the uncontested and overwhelming evidence that would allow us to determine this was harmless under *Lynch.*

## DISPOSITION

The matter is remanded with directions to vacate defendant's sentence on counts 4, 6, and 7, and resentence defendant on those counts.  Following resentencing, the trial court is directed to issue a corrected abstract of judgment reflecting the sentence modifications and forward a certified copy to the Department of Corrections and Rehabilitation.  The judgment is otherwise affirmed.


                    _____

                    HULL, Acting P. J.


We concur:


_____

MAURO, J.


_____

BOULWARE EURIE, J.


12